

**JAMES F. SCHNEIDER**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| COUNCIL OF UNIT OWNERS OF THE 100 HARBORVIEW DRIVE CONDOMINIUM, | * | Case No. 16-13049-JS |
| | * | Chapter 11 |
| Debtor in possession. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### *MEMORANDUM OPINION DENYING CONFIRMATION OF SECOND AMENDED PLAN OF REORGANIZATION WITH LEAVE TO AMEND*

For the reasons set forth, this Court will deny confirmation of the pending Second Amended Plan of Reorganization.

*FINDINGS OF FACT*

1. 100 Harborview Drive Condominium ("the building") also known as The HarborView Towers, is a 29-story luxury residential high rise that stands on the shore of Baltimore's Inner Harbor. It was established in 1993 as a condominium regime and contains 249 units and a health club. Disclosure Statement [P. 190].

2. The Council of Unit Owners of the 100 Harborview Drive Condominium ("the Council") or ("the debtor"), is an unincorporated condominium association, comprised of "any person, firm, corporation, trust or other legal entity . . . holding legal title to a condominium unit" in the building located at 100 Harborview Drive. Declaration (Debtor's Ex. 8) Article I (q).[1]

3. By-laws dated November 9, 1993, as amended, provide that "the affairs of the condominium project shall be managed by a Board of Directors" ("the Board"). Disclosure Statement [P. 190].

4. The owners of penthouse units 4A and 4C ("PH4A" and "PH4C") have been engaged in protracted litigation against the debtor. PH4C sued the debtor in

---

[1] In the instant Chapter 11, it is the association of unit owners that is in bankruptcy and not the building or the individual unit owners. The debtor is an unincorporated association that has legal characteristics similar to those of a corporation. There are officers and a board of directors and unit owners who, like stockholders, own individual percentages of the whole. They elect the officers who comprise the board and possess rights of action granted to them by the by-laws and documents that created the condominium regime. Just as stockholders of a corporation who are entitled to receive dividends, they may share in any profits, if any, produced by the association. Because the debtor is neither a condominium unit owner nor a landlord, but rather an association of condominium unit owners, property of the estate does not consist of the building or the land upon which the building stands, but merely a few units the debtor has recovered through legal repossession. Personal and intangible property of the estate include bank accounts, rights of action and the right to collect assessments and other fees from unit owners. Because the officers and directors are immune from suit in their official capacities, the debtor may be judgment-proof.

2

the state courts of Maryland since at least 2009, regarding James W. Ancel's[2] claims relating to water and other damage to his penthouse at Harborview. The parties went to arbitration and an award in favor of PH4C was confirmed by the Circuit Court for Baltimore City.[3]  "Following the circuit court's July 2012 decision, [the Council] satisfied the arbitration award of compensatory damages in full.  However, the specific performance was not complete by December 30, 2013, as mandated by the arbitration award and as ratified by the circuit court and this Court . . . [the Council] had difficulty obtaining funding for the necessary remediations after approximately 15% of its unit owners failed to pay a November 2011 special assessment levied to raise funds to fight pending lawsuits and pay for roof repairs.  After numerous loan application rejections, [the Council] obtained an l8-month construction loan in April of 2013 . . . Between the December 30, 2013,

---

[2] Mr. Ancel, is the sole owner of a limited liability company that is title holder to Penthouse 4C.

[3] The arbitration award required the debtor to complete extensive building repairs within two years, including replacement of the roof system, repair of the exterior facade, supplement the fall arrest protection system, perform curtain wall glazing, selective tuck pointing, selective brick replacement, selective masonry flashing installation, masonry expansion, joint width modification, selective precast concrete repairs, selective precast concrete cornice stabilization, selective EIFS [Exterior insulation and finish systems] repairs, selective polyurethane terrace balcony coating repair, selective balcony drain/pipe connector fitting replacement, selective repair of balcony drywall soffits, install flashing pans under penthouse, remove and replace railings, clean the facade, apply penetrating sealer to masonry and precast, clean and paint exposed structural steel. *100 Harborview Drive Condominium Council of Unit Owners v. Penthouse 4C,* LLC, 2015 WL 5929355, at *3 (Md. Ct. Spec. App. Aug. 20, 2015).

deadline and the May 19, 2014, contempt hearing, the record shows that the physical work on the remediation project progressed significantly." *100 Harborview Drive Condominium Council of Unit Owners v. Penthouse 4C, LLC*, 2015 WL 5929355, at *8 (Md. Ct. Spec. App. Aug. 20, 2015). Before the petition date, the debtor was in civil contempt for its failure to complete the required repairs and PH4C had been awarded three judgments against the debtor in the total amount of $2,203,792.62. PH4C's Reply to Debtor's Opposition to Motion to Dismiss [P. 70], ¶¶ 4-5.

5. The debtor has also been sued in a series of lawsuits brought in state and federal courts by the owners of PH4A, namely, Paul Clark, Rebecca Delorme, and their minor son, Paul Clark, Jr. Paul Clark filed Claim No. 46, asserting damages to his unit in the amount of $4,935,606.00. Rebecca Delorme filed Claim No. 47, asserting a liability of $10,307,524.00 based on contractor fees, damages for lost use and punitive damages. Paul Clark, Jr. filed Claim No. 48, identical to Claim No. 47 except in name.

6. On March 9, 2016, the Board filed the instant Chapter 11 bankruptcy petition in the name of the debtor. The petition was signed by Dr. Reuben Mezrich ("Mezrich"), who is and was at all times relevant president of the board. A document entitled "Resolution of the Board of Directors of the Council of Unit

Owners of the 100 Harborview Drive Condominium" was filed with the petition. The resolution purported to provide the authority for the filing of the petition.[4]

7. The Chapter 11 was precipitated by the litigation between the Council and PH4C, a creditor and member of the Council. Specifically, PH4C had garnished the Council's bank accounts at Howard Bank and Citizens Bank, which prevented the debtor from using its funds to continue to operate the business, including the payment "for basic services necessary to the health, safety and security to its condominium owners." Debtor's Opposition to Motion to Dismiss [P. 61].

8. As a result of the litigation that has drained its resources; the debtor is insolvent using a balance sheet test.

9. On December 21, 2016, the debtor proposed the Amended Plan of Reorganization [P. 229], which, as modified by the Second Amended Plan of Reorganization [P. 319] (the "Plan"), filed on February 23, 2017, is before the Court for confirmation. The objections of PH4A, PH4C, Baltimore Gas & Electric ("BGE") and the United States Trustee ("UST") remain after the lengthy confirmation hearing.

***CONCLUSIONS OF LAW***

---

[4] The bankruptcy filing was ratified by a majority vote of the Council.

1.   This Court has subject matter jurisdiction over the confirmation of a Chapter 11 plan pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of a plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L), over which this Court has exclusive jurisdiction.

REQUIREMENTS FOR CONFIRMATION - § 1129(a)

2.   The requirements for confirmation of the Plan are set forth in 11 U.S.C. § 1129.  The proponent bears the burden of showing that all those requirements are satisfied.  7 COLLIER ON BANKRUPTCY ¶ 1129.02[1] (16th ed.).

APPLICABILITY OF OTHER CODE SECTIONS – § 1129(a)(1)

3.   The first requirement of § 1129, that the "plan complies with the applicable provisions of this title," thereby requires that the court examine proposed plans of reorganization in light of all applicable sections of the Bankruptcy Code.  11 U.S.C. § 1129(a)(1).

*PROPER CLASSIFICATION OF CLAIMS – §§ 1122 and 1123(a)*

4.   Pursuant to 11 U.S.C. § 1123(a), a proposed plan must designate classes of claims and specify the treatment of "any class of claims or interests that is impaired under the plan."  *Id*.  Such classification must also be consistent with the provisions of 11 U.S.C. § 1122.[5]  Only PH4C has objected to the Plan on this

---

[5] 11 U.S.C. § 1122 provides that:

6

ground. PH4C argues that the plan classifies substantially similar claims into separate classes "in order to gerrymander an affirmative vote on a reorganization plan." Objection of PH4C P. 10, *quoting In re Bryson Properties, XVIII*, 961 F.2d 496, 502 (4th Cir. 1992). In *Bryson Properties*, the Fourth Circuit began its explanation of the requirements of § 1122 by stating that while it requires substantial similarity between claims that are placed in the same class, it does not require that "all substantially similar claims be placed within the same class, and it grants some flexibility in classification of unsecured claims." *Id.* Further, despite the flexibility afforded by § 1122, "[t]here must be some limit on the debtor's power to classify creditors . . . The potential for abuse would be significant otherwise . . . If the plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed." *Id.*, *quoting In re Hollywell Corp.*, 913 F.2d 873, 880 (11th Cir. 1990).

5. This Court finds none of the hallmarks of abuse in the Plan. As suggested by the debtor in its memorandum in support of confirmation, the classification of claims contained in the Plan, "does not affect the outcome of

---

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

voting and does not violate any priority rules." Memorandum of Law [P. 298], p. 6. Therefore, the objection is overruled.

*THIRD PARTY RELEASES - § 524(e)*

6. The UST objected to the release provisions in Sections 11.2, 11.3, 11.5 and 11.7 of the Plan. Pursuant to § 524(e) "discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt." 11 U.S.C. § 524(e).

7. The Fourth Circuit has explained that while § 524(e) does not prohibit approval of releases of nondebtors under a proposed plan, such releases should be granted "cautiously and infrequently" and only under "unusual circumstances." *Behrmann v. National Heritage Foundation*, 663 F.3d 704, 712 (4th Cir. 2011). Releases of nondebtors proposed in Chapter 11 plans must meet the standards set forth in *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning)*, 280 F.3d 648, 658 (6th Cir. 2002), and *In re Railworks Corp.*, 345 B.R. 529, 536 (Bankr. D. Md. 2006). *National Heritage Foundation*, 663 F.3d at 712 (finding the *Dow Corning* and *Railworks* factors instructive and commending them to bankruptcy courts for consideration of nondebtor releases). In *Dow Corning*, the Sixth Circuit Court of Appeals considered the following factors:

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization;

> (3)The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4)The impacted class or classes has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

*Dow Corning Corp.,* 280 F.3d at 658.

    8.  The *Railworks* factors can be summarized as follows:

> (1) Overwhelming approval for the plan; (2) A close connection between the causes of action against the third party and the causes of action against the debtor; (3) That the injunction is essential to the reorganization; and (4) That the plan of reorganization provides for payment of substantially all of the claims affected by the injunction.

*In re Nat'l Heritage Found., Inc.*, 478 B.R. 216, 226 (Bankr.E.D.Va. 2012) (citing *In re Railworks Corp.*).

    9.  The first release provision exculpates the debtor, "any Affiliate or any of their respective directors, officers, employees, members, attorneys, attorneys of the members, consultants, advisors and agents (acting in such capacity)" (the "protected parties") from liability for

> "any act taken or omitted to be taken in connection with or arising out of the commencement of the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation or approval of this Plan, any other plan of reorganization or any compromises or settlements contained herein, any disclosure statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the transactions set forth in the Plan or in connection with any other proposed plan (provided, however, that the foregoing provisions shall not affect the liability

that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct) unless such person obtains the prior approval of the Bankruptcy Court to bring such a claim."

Debtor's Second Amended Plan of Reorganization § 11.2.

10. Section 11.3 acts to release each member of the Board from "personal liability for any and all Claims related to their service to the Debtor." *Id.*, at § 11.3.

11. Section 11.5 enjoins all holders of claims and interests from asserting any claim against the protected parties "for which the Protected Parties are alleged to be directly or indirectly liable for the conduct of, Claims against, or demands on any of the Debtors, except for Claims that are based on willful misconduct or gross negligence." *Id.*, at § 11.5.

12. Lastly, section 11.7 states that,

"[u]nless a taxing Governmental Unit has asserted a Claims against the Debtor before the Bar Date established therefor, no claim of such Governmental Unit shall be Allowed against the Debtor, the Reorganized Debtor or their respective members, managers or other officers, employees or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date."

*Id.*, at § 11.7.

13.  Because the foregoing releases violate the *Dow Corning* and *Railworks* factors, the objection to the releases will be sustained.  Besides broadly hindering and/or depriving unit owners of their legitimate rights to access to the courts, no cogent reason has been presented to impose such an onerous and possibly unconstitutional restriction.  This Court holds that the by-laws adequately afford immunity from suit to those officers and board members acting in good faith in the performance of their official duties; and that the retention of post-confirmation jurisdiction affords an adequate forum in which to monitor, control and punish unnecessary or frivolous litigation.

PLAN MUST BE PROPOSED IN GOOD FAITH – § 1129(a)(3)

14.  PH4C raises an objection pursuant to § 1129(a)(3), which requires that a plan be "proposed in good faith and not by any means forbidden by law." *Id.*

15.  The Court has determined that the Plan was filed in good faith, having considered the totality of the circumstances.  These include the necessity for filing of the instant Chapter 11, the numerous disputes and lawsuits filed against the debtor by the objecting penthouse owners, their objections to the disclosure statement and to confirmation and the abundance of evidence of good faith presented at the hearing.  *See National Heritage Foundation*, 663 F.3d at 709 (approving the totality of the circumstances test relating to the issues presented at confirmation).

16. This Court also finds that the debtor has proposed the Plan which provides a 100% distribution to all creditors, "with the legitimate and honest purpose of reorganizing and maximizing both the value of [its] Estate and the recovery to Claimants[,]" regardless of whether or not the plan is confirmable. *Id.*, at 709-710. Therefore, this objection is overruled.

BEST INTERESTS OF CREDITORS TEST –§ 1129(a)(7)

17. Section 1129(a)(7) provides to each creditor or interest holder "an individual guaranty . . . that it will receive at least as much in reorganization as it would in liquidation." 7 COLLIER ON BANKRUPTCY ¶ 1129.02[7] (16th ed.). PH4C objected to confirmation pursuant to § 1129(a)(7) on the grounds that the debtor functions as a general partnership; that pursuant to § 723(a), each partner, or unit owner, is personally liable for any "deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership…" *Id.* PH4C is in error on the issue of partnership. The debtor's Declaration provides that nothing contained therein "shall be deemed or construed by any unit owner, nor by any third party, as creating the relationship of…partnership…" Declaration, Article XII(k) P. 17.

18. Regardless of whether the debtor is or is not a partnership, the Plan must satisfy the best interests of creditors test. At the hearing, Michael Wolff, qualified as an expert in the area of Chapter 7 liquidations, testified that if conversion

occurred, "there would be nothing to return to unsecured creditors." Hearing Tr. P. 89, Feb. 13, 2017. On cross-examination, counsel for PH4C pressed Mr. Wolff regarding the value of debtor's future rights to make assessments against unit owners. Mr. Wolff pointed out that without court approval to operate the debtor, the debtor would cease to exist and a chapter 7 trustee would have only existing assets to administer, including assessments due or delinquent at the time of conversion. The focus in an assessment of compliance with § 1129(a)(7) is the liquidation value, not ongoing operation of a debtor in a Chapter 7. 11 U.S.C. § 1129(a)(7). There being no countervailing evidence, the objection will be overruled.

FEASIBILITY – § 1129(a)(11)

19. PH4C alleged that the Plan is not feasible because it does not account for the continuing need to make certain repairs. Specifically, PH4C maintains that the debtor must "clean the rooftop HVAC unit and the ductwork from those units through the elevator lobbies on each floor of the building in accordance with National Air Duct Cleaners Association standards . . . and replace the building's roof system, repair the exterior façade and make other repairs as set forth in a report by the Debtor's consultant, CSG." PH4C Objection to Confirmation [PP. 15-16]. PH4C also continues to stress its position that the railings on all balconies must be replaced with "code-compliant" railings. *Id.*, at 16.

13

20. The penthouse owners have relied upon the Rooker-Feldman Doctrine, *res judicata* and collateral estoppel to control the governance of a condominium association of which 400 others are members.[6] In bankruptcy, federal law controls the priorities of creditors and the classification of their claims. However, because this Court is bound by the doctrines of *res judicata* and collateral estoppel to recognize prior state court orders where possible, to be confirmable, any plan of reorganization must accord full faith and credit to damage awards and contempt sanctions imposed against the debtor. This Court has no power to excuse the debtor from the consequences of its contempt for violating valid state court orders.

---

[6] The Rooker-Feldman doctrine precludes lower federal courts from asserting jurisdiction over the review of state court judgments by direct appeal. However, it has no application that constrains this or any other bankruptcy court from considering the priority, the allowance and/or classification of state court-created claims for purposes of confirming a Chapter 11 plan. Similarly, both *res judicata* and collateral estoppel require that state court orders be respected and enforced in subsequent federal proceedings, especially as to money judgments and damages arising from the debtor's contempt. Neither doctrine precludes this Court's computation and allowance of such claims and their classification and priority for purposes of confirming a plan of reorganization. While state law determines the property interests of debtors and creditors, federal law determines their relative rights in the context of a bankruptcy proceeding. See *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); and Memorandum of Decision at [47], *In Re Diane Y. Long*, No. 14-13592, (Bankr. Ct. D. Md. Sept. 15, 2014).

21. The Plan authorizes additional special assessments "at any time" if additional funds are required "for the operation and maintenance of the Debtor." Plan [P. 229], § 6.2.3. If the debtor is required to replace all railings, or complete other unanticipated repairs, the Plan authorizes it. On this basis, the objection will be overruled.

UNFAIR DISCRIMINATION – § 1129(b)

22. Each objecting creditor has raised 11 U.S.C. § 1129(b) as a barrier to confirmation.[7] Section 1129(b) is applicable once all the requirements of 1129(a) other than paragraph (8) are met. 7 COLLIER ON BANKRUPTCY ¶ 1129.03[1] (16th ed.). Because this Court has determined that the Plan is not confirmable pursuant to 1129(a)(1), it is unnecessary to consider a cramdown.[8]

WHEREFORE, confirmation of the Plan will be denied with leave to amend.

***ORDER ACCORDINGLY.***

cc: All parties

---

[7] If all the requirements in § 1129(b) are met, "confirmation can be "crammed down" the throat of the dissenting class," without needing to satisfy the requirements contained in § 1129(a)(8). 7 COLLIER ON BANKRUPTCY ¶ 1129.03[1] (16th ed.).

[8] The Court does, however, find the argument of BGE convincing regarding the proposed treatment of it and the other Class 6 creditors. As argued by BGE, there is no rational basis to subject it and the other class 6 claimants to the proposed 11-year delay in payment, resulting in payment of materially less than the present value of their claims and a substantially higher risk of nonpayment.

All counsel