

**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Council of Unit Owners of the | * | |
| 100 Harborview Drive Condominium, | * | Case No. 16-13049-MMH |
| | * | |
| Debtor. | * | Chapter 11 |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### <u>MEMORANDUM OPINION</u>

The claims at issue in this adversary proceeding have spawned years of litigation between the parties. Although the claims are multifaceted, those addressed by this Memorandum Opinion focus on alleged damage to, and a failure to repair and maintain, a condominium unit owned by Dr. Paul C. Clark. Dr. Clark and his family, Ms. Rebecca Delorme and Paul Clark, Jr. (collectively with Dr. Clark, the "Creditors"), moved into the unit in November 2009, and moved out of the unit in March 2010. The Creditors allege that the damage to the unit remains and that the unit has not been inhabitable since March 2010. The above-captioned Debtor disputes that the unit is uninhabitable and that it has failed to repair and maintain the unit as required by applicable law and the Debtor's governing documents.

The parties have each filed motions for partial summary judgment on claims relating to the alleged damage to the unit. The Debtor filed its third Motion for Summary Judgment (the

"Debtor's Third Motion") [ECF 568], and the Creditors filed a Motion for Partial Summary Judgment, Memorandum of Law in Support, and a Line attaching Affidavits (collectively, the "Creditors' Motion") [ECF 595, 596 and 597].[*] The parties also filed opposition papers to each motion [the "Debtor's Opposition" at ECF 620; the "Creditors' Third Opposition" at ECF 621], and the Creditors filed a Reply in Support of their Motion for Partial Summary Judgment (the "Creditors' Reply") [ECF 632].

The Court finds that the record shows no genuine issue of material fact with respect to the following: (i) the Creditors' breach of fiduciary duty and breach of contract claims, and any related damages, based on facts, allegations, or conduct arising on or prior to February 23, 2012, are barred under the doctrine of res judicata by a 2012 decision of the Baltimore City Circuit Court; (ii) the Debtor breached its duty to maintain and repair the unit, but only as to facts and conduct occurring after February 23, 2012; and (iii) the Creditors do not have sustainable claims for attorney's fees or punitive damages. The Court thus will grant summary judgment on this specific and limited relief requested in the respective motions. The Court is not granting summary judgment or any relief on the remaining aspects of the motions, including whether Ms. Delorme or Paul Clark, Jr. is a third party beneficiary of the contract, or whether the Debtor has any valid defenses to the breach of contract claim or, if no comprehensive defense, the amount of the Creditors' damages. Those issues will proceed to trial as previously scheduled in this contested matter.

## I.        Relevant Background on Chapter 11 Case

The Debtor is an unincorporated condominium association, comprising "any person, firm, corporation, trust, or other legal entity … holding legal title to a condominium unit" in the

---

[*] All references to pages in the "Debtor's Second Motion," the "Debtor's Third Motion," or the "Creditors' Motion" refer to the corresponding pages in the Memorandum in Support of that particular motion.

building located at 100 Harborview Drive (the "Building"). Creditors' Motion Ex. 2, Art. I (q). The Building "is a 29-story luxury residential high rise that stands on the shore of Baltimore's Inner Harbor." *In re Council of Unit Owners of the 100 Harborview Drive Condominium*, 572 B.R. 131, 135 (Bankr. D. Md. 2017) (J. Schneider). It "was established in 1993 as a condominium regime and contains 249 units and a health club." *Id.*

On March 9, 2016, the Debtor filed this chapter 11 case. The Debtor seeks to, among other things, reorganize its financial affairs and resolve years of litigation with the owners of two different units in the Building through a chapter 11 plan. Dr. Clark owns one of the units involved in this litigation—penthouse 4A ("Unit PH4A"). The Creditors' proofs of claim, at Claim Nos. 46, 47, and 48 (the "Claims"), collectively assert in excess of $25 million in damages against the Debtor. The Claims are based on alleged violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 (the "FHA Claims"), alleged property damage to Unit PH4A, and consequential and other damages allegedly arising from those claims. On January 24, 2017, the Debtor filed objections to the Claims [ECF 264–266]. On February 23, 2017, the Creditors each filed an opposition to the Debtor's objections [ECF 316–318].

On May 18, 2017, Judge Schneider entered a Scheduling Order [ECF 393] with respect to the contested matter involving the Claims (the "Contested Matter"). The Court and the parties have subsequently amended that Scheduling Order several times. [ECF 474, 514, 618, 640]. The parties have conducted discovery and filed a total of four different dispositive motions in the Contested Matter. The Court held a hearing for purposes of oral argument on three of these dispositive motions, including the Debtor's Third Motion and the Creditors' Motion, on January

5, 2018 (the "Hearing").[1] (The transcript of the Hearing is at ECF 643 (the "Transcript").) A trial on the Contested Matter is set to begin on February 6, 2018.

## II.    Relevant Background of Prior Administrative and Judicial Proceedings

The Creditors and the Debtor have been litigating various issues relating to Unit PH4A for several years. The Maryland Court of Special Appeals summarized "the multiplex of administrative and trial court actions and appeals involving" the Creditors and the Debtor in a 2015 reported decision. *See 100 Harborview Drive Condominium v. Clark*, 119 A.3d 87,  93 (Md. App. 2015). The Court recounts only those aspects of this litigation history relevant to the pending motions. A more detailed account, including litigation relating to the FHA Claims, is set forth in the Court's Memorandum Opinion addressing the FHA Claims and entered simultaneously with this decision (the "FHA Memorandum Opinion").

On October 20, 2010, Dr. Clark filed a lawsuit against the Debtor and its  professional property management company, Zalco Reality, Inc. ("Zalco"), in the Circuit Court for Baltimore City. *Clark v. Zalco Realty, Inc., et al.*, 24-C-10-007236 (Circ. Ct. Balt. City) (the "First State Court Action"). In the First State Court Action, Dr. Clark asserted a fraudulent misrepresentation claim and violations of the Maryland Consumer Protection Act against the Debtor and Zalco. These claims involved Dr. Clark's purchase of Unit PH4A in October 2009 and the resale disclosure certificate issued by the Debtor and Zalco in connection with that transaction. The Circuit Court granted summary judgment in favor of the Debtor and Zalco in the First State Court Action, which decision was subsequently affirmed by the Maryland Court of Special Appeals. *See 100 Harborview Drive*, 119 A.3d at 95 (describing result of this particular action).

---

[1] By an Order [ECF 502] dated October 26, 2017 (the "October 2017 Order"), the Court denied the Debtor's first dispositive motion "without prejudice to the parties filing dispositive motions with respect to the FHA Claims in this contested matter on grounds other than claim and issue preclusion as set forth in the Motion."

On January 14, 2013, Dr. Clark filed a lawsuit in the Circuit Court for Baltimore City under the Maryland Condominium Act, seeking the production of certain documents from the Debtor and monetary damages. *Clark v. 100 Harborview Drive Council of Unit Owners, et al.*, 24-C-13-000322 (Circ. Ct. Balt. City) (the "Second State Court Action"). In the Second State Court Action, the Circuit Court held that the Debtor was not required to produce written legal advice provided to the Debtor or those documents already produced concerning the Debtor's financial affairs, but that it was required to produce certain legal invoices. *See 100 Harborview Drive Council of Unit Owners v. Clark*, 119 A.3d 87 (Md. App. 2015) (describing the Circuit Court's decision and affirming in part, and vacating in part, that decision).

On May 8, 2013, Dr. Clark filed a lawsuit against the Debtor in the Circuit Court for Baltimore City, alleging that the common elements of the condominium were defective, causing mold and water infiltration into Unit PH4A. *Clark v. 100 Harborview Drive Council of Unit Owners*, 24-C-13-002770 (Circ. Ct. Balt. City) (the "Third State Court Action"). In the Third State Court Action, Dr. Clark asserted various causes of action, including breach of contract, negligence, and breach of fiduciary duty. The Third State Court Action is pending in the Circuit Court, but is stayed as a result of the Debtor's chapter 11 case.

On March 24, 2014, Dr. Clark filed a lawsuit against the Debtor in the Circuit Court for Baltimore City, seeking a temporary restraining order and preliminary and permanent injunctive relief that would allow Dr. Clark to send his lawyers to the Debtor's Board and committee meetings. *Clark v. 100 Harborview Drive Council of Unit Owners*, 24-C-14-001537 (Circ. Ct. Balt. City) (the "Fourth State Court Action"). On October 31, 2014, the Circuit Court awarded summary judgment to the Debtor, ruling that the Debtor's policy resolution barring Dr. Clark's lawyers from the Debtor's meetings "is lawful and proper." *See* Debtor's Second Motion for

Partial Summary Judgment ("Debtor's Second Motion") [ECF 545] Ex. I. Additionally, in the Fourth State Court Action, the Debtor counterclaimed for injunctive relief, seeking access to Unit PH4A to perform necessary maintenance and repairs on common elements affecting water infiltration into the condominium building and its units. *See* Debtor's Second Motion Exs. K, L.[2] The Circuit Court entered a Permanent Injunction against the Clarks on February 18, 2015, which prevented the Clarks from denying the Debtor access to Unit PH4A. *Id.*

### III.    Summary of Facts Relating to Pending Motion[3]

Dr. Clark is the owner of Unit PH4A. Ms. Delorme is Dr. Clark's wife, and was formerly a resident of Unit PH4A. Paul C. Clark, Jr., is the minor son of Dr. Clark and Ms. Delorme, and was formerly a resident of Unit PH4A.

In early November, 2009, the Creditors moved into their new home located at Unit PH4A. Just prior to purchasing their unit, the Creditors noted the presence of a small leak in the ceiling of the unit, and were told by Ms. Giselle Rivera, the general manager, that this item would be fixed shortly. On December 18, 2009, Ms. Delorme provided a copy of her front door key for Unit PH4A to management. *See* Creditors' Motion Ex. 8.

The Creditors retained MMTS Environmental, which issued a report concerning water leakage in Unit PH4A on March 30, 2010. The Creditors thereafter moved from Unit PH4A on March 30, 2010, and moved back into Unit 433 at Pierside, which they took off the market at that time. The Creditors have resided in Unit 433 at Pierside, which is an approximately 1000 square foot unit, while Unit PH4A is approximately 4000 square feet, since March 30, 2010.

---

[2] The Creditors appealed this decision to the Maryland Court of Special Appeals, which heard oral argument, but had not issued a ruling at the time that the Debtor filed this chapter 11 case. The Court of Special Appeals has since dismissed that appeal. Debtor's Second Motion at 14.

[3] The facts set forth in this Part III are taken from the section titled, Undisputed Material Facts, in the Creditors' Motion, and include only those facts identified as undisputed by the Debtor in the Debtor's Opposition. *See* Creditors' Motion at 1–11; Debtor's Opposition, Debtor's Response to Undisputed Facts, at 1–6.

On June 28, 2010, the Baltimore City Health Department issued a Citation for mold in Unit PH4A against the Debtor. *See* Creditors' Motion Ex. 11. As part of the Debtor's efforts to address issues in the unit, one of the rooms in the unit was actually shelled with the ceilings, and wall removed, leaving bare concrete and a view of the roof above without insulation to insulate heating and cooling. On May 19, 2011, the Debtor issued an Invitation to Bid on Roof Replacement of the building located at 100 Harborview Drive. *See* Creditors' Motion Ex. 13.

Mr. Bruce Jacobs, M.I.H, C.I.H., an environmental hygienist, issued reports relating to Unit PH4A on December 14, 2011, and December 21, 2011. On January 12, 2012, the Debtor entered into a contract with Simpson of Maryland, Inc. to perform the roof replacement. *See* Creditors' Motion Ex. 16. On February 9, 2012, Simpson's subcontractor was granted access to Unit PH4A to view water test results. *See* Creditors' Motion Ex. 18. Mr. Jacobs issued additional reports relating to Unit PH4A on November 15, 2012, January 18, 2013, January 23, 2013, and July 19, 2013. *See* Creditors' Motion Exs. 19, 23, 24, 27.

On June 23, 2013, the Baltimore City Health Department issued a Heath Violation Notice for Unit PH4A. *See* Creditors' Motion Ex. 25. On May 8, 2013, Dr. Clark filed the lawsuit described above as the Third State Court Action.

Between October 14, 2013, and March 12, 2014, counsel for the Debtor and counsel for the Creditors exchanged correspondence *See* Creditors' Motion Exs. 29–34. The record contains an additional email from Mr. Clark's counsel dated July 9, 2014. *See* Creditors' Motion Ex. 35. On October 15, 2014, Simpson executed a contract to replace the skylights located over Unit PH4A. *See* Creditors' Motion Ex. 36.

On January 12, 2016, Mr. Jacobs issued another report relating to Unit PH4A. *See* Creditors' Motion Ex. 46. On March 29, 2016, the Maintenance Committee for the Debtor issued

Minutes. *See* Creditors' Motion Ex. 47. On June 21, 2016, Mr. Jacobs issued a Mold Remediation Protocol. *See* Creditors' Motion Ex. 48.

These facts, with additional details, and further facts in the record are discussed below in Part V, which sets forth the Court's analysis of the claims addressed by the Debtor's Third Motion and the Creditors' Motion.

### IV.    Legal Standards and Evidentiary Objections

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this Contested Matter by Bankruptcy Rule 7056, governs the parties' respective motions for partial summary judgment. A moving party may be entitled to judgment as a matter of law under Civil Rule 56 in the absence of any genuine issue of material fact. Fed. R. Civ. P. 56. *See Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)). *See also Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing standards for summary judgment). "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett*, 532 F.3d at 297. Courts generally will grant summary judgment "unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." *Stanley Martin Cos. v. Universal Forest Prods. Schoffner LLC*, 396 F. Supp. 2d 606, 614 (D. Md. 2005) (citations omitted).

The court must view the evidence on summary judgment in the light most favorable to the nonmoving party and "draw all justifiable inferences" in its favor, "including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520 (1991) (citations omitted). Under Civil Rule 56, a party may support assertions made in a motion for summary judgment by citing to particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials.[4] Fed. R. Civ. P. 56(c). In this Contested Matter, the parties have attached voluminous exhibits to their pleadings. Included in the exhibits are affidavits, emails, letters, answers to interrogatories, condominium documents, and expert reports, among many other documents. The Creditors have objected to several of the Debtor's exhibits, including the affidavit of Dr. Reuben Mezrich in support of the exhibits to the Debtor's Third Motion (the "Mezrich Affidavit"), and the affidavits and expert reports of certain of the Debtor's experts (the "Expert Reports").[5]

A court has some flexibility in the kinds of evidence that it can consider in resolving a motion for summary judgment. *See, e.g., Humphreys & Partners Architect*, 790 F.3d 532, 538–539 (4th Cir. 2015). As explained by the U.S. Court of Appeals for the Fourth Circuit, "[a] court may consider materials that would themselves be admissible at trial, and the content or substance of otherwise inadmissible materials where the 'the party submitting the evidence show[s] that it will be possible to put the information ... into an admissible form.'" *Id.* (quoting 11 James Wm. Moore et al., Moore's Federal Practice § 56.91[2] (3d ed. 2015)). On summary judgment, a party "'need only make out a prima facie case showing that [the exhibit] is what he or she claims it to be'" for purposes of authentication under Federal Rule of Evidence 901. *Williams v. Kettler Management, Inc*., 2014 WL 509474, at *4 (D. Md. Feb. 5, 2014) (citations omitted); *Stanley Martin Cos*., 396 F. Supp. 2d at 612–613 (denying request to strike deposition transcripts that

---

[4] The Court notes that the parties in the Contested Matter had a full opportunity to conduct discovery, and discovery closed prior to the filing deadline for dispositive motions. The Creditors requested, and the Court granted on a limited basis, one deposition after this time. That deposition was completed approximately one week prior to the Hearing. [ECF 591, 558, 557, 544]

[5] The Creditors also objected to the Affidavit of Mr. John H. Cochran that the Debtor attached to its Reply in Support of the Debtor's Second Motion. The Court addresses that objection in the FHA Memorandum Opinion.

were not accompanied by executed court reporter certificates).[6] Moreover, courts, including the Supreme Court, have determined that "a motion for summary judgment may be made pursuant to Rule 56 'with or without supporting affidavits.'" *Celotex Corp.,* 477 U.S. at 324.

The Mezrich Affidavit purports to authenticate the exhibits attached to the Debtor's Third Motion. Dr. Mezrich is the President of the Debtor's Board. In the affidavit, Dr. Mezrich affirms, "under the penalties of perjury," that he has personal knowledge of the facts, has reviewed the memorandum in support of the Debtor's Third Motion, and that "[e]ach of the Exhibits referred to in [that memorandum] are true and authentic copies of what they may purport to be." Debtor's Third Motion Mezrich Affidavit at ¶¶ 2, 4–5. The Creditors assert that the Mezrich Affidavit "should be stricken" because Mr. Mezrich "does not, and cannot, have personal knowledge of the facts related to Creditors' FHA Claims since Mr. Mezrich was not a member of Debtor's Board of Directors during the relevant period." Creditors' Third Opposition at 2.

As noted above, the central question underlying authentication is whether the evidence is what it purports to be. Evidence Rule 901(b) provides parties with a non-exclusive list for establishing the authenticity of an exhibit. Fed. R. Evid. 901. The proponent may, as here, provide an affidavit. The affiant does not need to be the author of the document, but does need to have personal knowledge on which to base her identification of the exhibit. Moreover, "authentication may be accomplished entirely through circumstantial evidence, and 'any and all manner of circumstantial evidence may be used to establish that the document is genuine.'" *Milbourne v. JRK Residential Am.*, LLC, 2016 WL 1070818, at *3 (E.D. Va. Mar. 15, 2016)

---

[6] Notably, Civil Rule 56 was amended in 2010 and, as stated in the Committee Note to that amendment, "[t[he requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record." Fed. R. Civ. P. 56, Committee Note.

(quoting *ABN Amro Mortg. Grp., Inc. v. Mazimum Mortg., Inc*., 2006 WL 2598034, at *5 (N.D. Ind. 2006)).

The Court has reviewed the Mezrich Affidavit and the exhibits attached to the Debtor's Third Motion. The Court observes that the Mezrich Affidavit does not speak to the merits of any of the claims or allegations in the Contested Matter or any other litigation between the parties. *See Breyan v. U.S. Cotton, LLC Long Term Disability Plan*, 2013 WL 5536795, at *5 (W.D.N.C. Oct. 7, 2013) (noting the limited and proper nature of affidavit purporting solely to authenticate a document). Rather, the sole focus is on authenticating and identifying each exhibit. Dr. Mezrich also was President of the Board of Directors or a resident in the Building during the relevant period. The former would allow him to review materials maintained in the ordinary course of the Debtor's business, and the latter would have allowed him to observe materials circulated to residents, such as the Building publications.[7] In addition, "the appearance, contents, substance, internal pattern, or other distinctive characteristics" of the exhibits permit their authentication under Evidence Rule 901. *JRK Residential Am*., 2016 WL 1070818, at *3. Considering all of the relevant circumstances, the Court denies the Creditors' request to strike the Mezrich Affidavit.

After a full review of the factual evidence and legal arguments presented by the Debtor's Third Motion, the Creditors' Motion, and the related pleadings, the Court does not find it necessary to address or rule on the Creditors' objection to the Expert Reports. To the extent the Debtor seeks to rely on experts or the Expert Reports at trial and the Creditors still object, the Court will address those objections at that time. The Court will, of course, be guided by Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993),

---

[7] *See, e.g., Thomas v. Deutsche Bank Nat'l Trust Co*., 2014 WL 2980363 (N.D. Tex. July 2, 2014) (discussing, and collecting cases on, affiant's personal knowledge based on position); *Lorraine v. Market Am. Ins. Co.,* 241 F.R.D. 534, 545 (D. Md. 2007) ("'[T]he "knowledge" requirement of Rule 901(b)(1) is liberally construed. A witness may be appropriately knowledgeable through having participated in or observed the event reflected by the exhibit.'") (citation omitted).

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), and *United States v. Crisp*, 324 F.3d

261 (4th Cir. 2003). In addition, if a party intends to object to any of the proposed experts

identified for trial, the Court may determine that additional briefing or a pre-trial hearing is

required and will make such determinations after reviewing the parties' Joint Pre-Trial Report.[8]

## V.    Analysis

The primary issues addressed by both the Debtor's Third Motion and Creditors' Motion

concern the alleged damage to Unit PH4A from water leaks, pigeon feces, and mold infiltration

over the past several years.[9] The Creditors assert that all of this alleged damage was caused by

the Debtor's breach of its fiduciary and contractual duties. The Debtor, on the other hand, argues

that it has fulfilled all of its duties, that it addressed each problem identified with Unit PH4A as

each issue arose, and that, to the extent delay occurred, the Creditors' conduct caused the delay

and any resulting damage. The Court has reviewed all of the pleadings, including all of the

exhibits thereto containing admissible evidence,[10] and reaches the following conclusions

concerning the Debtor's Third Motion and the Creditors' Motion.

---

[8] Given the existing trial schedule in the Contested Matter, the Court likely would set any necessary hearing on these issues for the first day of trial.

[9] These claims are asserted under, and as part of, the Creditors' Claims in this chapter 11 case. For purposes of the claims process, under Bankruptcy Rule 3001(f), the filing of the Creditors' Claims constitutes prima facie evidence of the amount and validity of the Claims. *Stancill v. Harford Sands, Inc. (In re Harford Sands, Inc.),* 372 F.3d 637, 640 (4th Cir. 2004). The Debtor presented sufficient evidence in its objections to the Claims to carry its burden to then rebut the presumptive validity of the Claims. *Id.* Accordingly, the Creditors have "the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence." *Id.*

[10] At summary judgment, courts "may consider materials that would themselves be admissible at trial, and the content or substance of otherwise inadmissible materials" where it is possible that the evidence can be put "into an admissible form." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538–539 (4th Cir. 2015). *See also* Federal Rule of Civil Procedure 56(c)(2) (stating that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). "If the nonmovant objects to the court's consideration of 'material cited to support or dispute a fact,' Fed.R.Civ.P. 56(c)(2), the movant has the burden 'to show that the material is admissible as presented or to explain the admissible form that is anticipated,' Fed.R.Civ.P. 56 advisory committee's note." *Humphreys*, at 538–539. Except as otherwise noted in this Memorandum Opinion, the parties did not object to the admission of the email or other exhibits attached to the pleadings. With respect to the email exhibits, the Court notes that other courts have found email messages to be admissible under a variety of Evidence Rules. *See U.S. v. Siddiqui*, 235 F.3d 1318, 1323 (11th Cir. 2000) (admitting email evidence over hearsay objection on the basis that the emails constituted admissions of a party pursuant to Federal Rule of Evidence 801(d)(2)(A)); *U.S. v. Levy*, 2008 WL 373646 *5 (Feb. 8, 2008) (discussing circumstances

## A.      Capacity of a Minor to File a Proof of Claim

In the Debtor's Third Motion, the Debtor asserts that the Creditors' minor child does not have the capacity to file a proof of claim. A review of the proof of claim at claim no. 48 reveals that the child is identified as the "debtor" and Dr. Clark is identified as the "creditor."[11] The supporting documentation for the proof of claim identifies only the child, as a minor. The Creditors' lawyer signed the proof of claim.

Civil Rule 17, made applicable to the Contested Matter by Bankruptcy Rules 9014 and 7017, provides that "the law of the individual's domicile" (if not acting in a representative capacity) or "the law of the state where the court is located" (if acting in a representative capacity) determines the capacity of an individual to sue or be sued. Fed. R. Civ. P. 17(b)(3). Maryland law thus applies regardless of whether the minor is attempting to act in his own right or whether an individual is acting on his behalf. Civil Rule 17 further states that a minor who does not have a court appointed representative "may sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2). Maryland law generally invokes the concept of "'next friend' or 'prochein ami,' which is one who brings suit on behalf of a minor … because the minor … lacks capacity to sue in his or her own right." *Fox v. Wills*, 890 A.2d 726, 729–730 (Md. 2006). Under Maryland law, a child's parent has the right to sue on that child's behalf. *Id.* at 731–732 (citing the applicable Maryland rule).

in which emails do not constitute hearsay, and quoting *U.S. v. Safari*, 849 F.2d 891, 894 (4th Cir. 1988) to support admission of emails as non-hearsay because "they were not offered to prove the truth of the matter asserted"); *Avondale Mills, Inc. v. Norfolk Southern Corp.*, 2008 WL 6953956 (D. S.C. Feb. 21, 2008) (denying plaintiff's motion in limine to exclude emails and noting that emails would be admitted or excluded at trial "consonant with the Federal Rules of Evidence."); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534 (D. Md. 2007) (discussing, in depth, the admissibility of email evidence in the context of all manner of possible evidentiary issues); and *New York v. Microsoft Corp.*, 2002 WL 649951 (D. D.C. Apr. 12, 2002) (analyzing admissibility of email evidence under the "present sense impression," "existing state of mind or condition," and "business records" exceptions to the hearsay rule).

[11] The Court notes that the proof of claim identified as "Claim 48" and attached to the Debtor's Third Motion is different from the proof of claim form identified as claim no. 48 in the Court's claims register in this case. The primary difference appears to be who is identified as the "debtor" in the top box of the proof of claim form. In the claims register, the child is identified as the debtor.

The Debtor's legal position on this issue is correct. The Debtor's own evidence on this issue, however, creates a genuine issue of material fact. For example, as noted above, the proof of claim form for claim no. 48 is confusing in that it does not identify the child as the creditor, but rather, identifies Dr. Clark as the creditor.[12] That reference to Dr. Clark is not as next friend of the child, but the parent is identified on the form.[13] The child's answers to Interrogatories attached as an exhibit to the Debtor's Third Motion also are signed by Dr. Clark, "as parent and natural guardian of" the child. Debtor's Third Motion Ex. 6. Accordingly, the Court will deny this aspect of the Debtor's Third Motion.

### B.    Standing to Bring Claims

The Debtor argues that neither Ms. Delorme nor Paul Clark, Jr. have standing to sue because they are not the "real party in interest" with respect to the alleged damage to Unit PH4A. The deed for Unit PH4A is in the name of Dr. Clark, and, as such, Dr. Clark is considered the "owner" of the unit under the Debtor's governing documents. Creditors' Motion Exs. 1; 2 at 6. The Debtor's bylaws, in turn, provide in relevant part:

> Applicability of By-laws. The terms, conditions and restrictions of these Bylaws are applicable to the condominium project and to the use, occupancy, benefit and enjoyment thereof, and shall inure to the benefit of the unit owners and be binding upon said unit owners, their tenants, guests and other invitees, the agents, servants and employees of such unit owners, tenants, guests and invitees, and any other person, firm or corporation using any facility of the property.

Creditors' Motion Ex. 3, at § 2, Art. I.

Under Maryland law, "[a]n individual is a third-party beneficiary to a contract if 'the contract was intended for his [or her] benefit' and 'it ... clearly appear[s] that the parties intended

---

[12] The proof of claim at claim no. 47 for Ms. Delorme in the Court's claims register is completed in a similar manner, with Ms. Delorme identified as the "debtor" and Dr. Clark identified as the "creditor."

[13] The Court recognizes that the identification of Dr. Clark on the proof of claim form could be a mistake, but that is not an appropriate determination for summary judgment when viewing the evidence in the light most favorable to the nonmoving party.

to recognize him [or her] as the primary party in interest and as privy to the promise.'" *Dickerson v. Longoria,* 995 A.2d 721, 741 (Md. 2010) (quoting *Shillman v. Hobstetter,* 241 A.2d 570, 575 (Md. 1968)). A third-party beneficiary may sue to enforce the terms of the contract under Maryland law. Importantly, the fact that a contract may operate to the benefit of a third party is not sufficient; rather, the parties must have intended the third party to be a "'primary party in interest and as privy to the promise.'" *Yaffe v. Scarlett Place Residential Condominium, Inc.,* 45 A.3d 844, 851 (Md. Ct. Spec. App. 2012) (citation omitted). "In determining whether one is a third-party beneficiary, it is proper to look to the terms of the contract, as well as the surrounding circumstances." *D.J. Diamond Imports, LLC v. Silverman Consultants, LLC,* 2012 WL 163231, at *5 (D. Md.  Jan. 18, 2012) (citation omitted) (applying Maryland law).

The language from the Debtor's bylaws quoted above and cited by the Debtor at the Hearing clearly identifies unit owners as beneficiaries of the contract. Transcript at 150. The language specifically states that the bylaws "inure[] to the benefit of" the unit owners. Creditors' Motion Ex. 3, at §2, Art. I. It likewise only extends the burdens of the contract to third parties, providing that it is "binding" on the unit owners and others. *Id.* This particular language identifies a clear distinction between the parties receiving the benefits and those receiving the burdens of the contract. Nevertheless, the Creditors argue that the parties intended the bylaws to not only bind, but also to apply in all respects to Ms. Delorme and Paul Clark, Jr. In this regard, Article XIII of the bylaws does suggest some benefit for "residents," which appears to include parties other than the unit owners. For example, section 20 of Article XIII prohibits various conduct "if it will disturb or annoy any residents of the building in which the unit is located or in any other building." Creditors' Motion Ex. 3, at § 20, Art. XIII. Given that a court must look to the contract and surrounding circumstances in making a third-party beneficiary designation, and

given the potentially conflicting language in the bylaws, the Court finds that a genuine issue of material fact exists on this issue and will, accordingly, deny this aspect of the Debtor's Third Motion.

### C.    Res Judicata of Decision in First State Court Action

As described in Part II, Dr. Clark filed the First State Court Action against the Debtor in October 2010. That lawsuit alleged that the Debtor engaged in fraudulent misrepresentations and violations of the Maryland Consumer Protection Act. Dr. Clark filed a second amended complaint in the First State Court Action in January 2012 (the "Second Amended Complaint"), and the Baltimore City Circuit Court entered summary judgment in favor of the Debtor on all counts on February 23, 2012 (the "First State Court Decision"). Debtor's Third Motion Ex. 7; Debtor's Reply Memorandum in Support of Debtor's Motion for Partial Summary Judgment on FHA Claims (the "Debtor's Second Reply") [ECF 631] Ex. FF.

The Debtor argues that the First State Court Decision and the doctrine of res judicata (claim preclusion) bar the Creditors' attempt to relitigate claims for damages to Unit PH4A. "Under Maryland law, the elements of res judicata, or claim preclusion, are: (1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment on the merits. … If a final judgment exists as to a controversy between parties, those parties and their privies are barred from relitigating any claim upon which the judgment is based." *Anne Arundel Cty Bd. Of Ed. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005) (citations omitted). To determine whether a claim is identical to that previously litigated, Maryland follows the "transactional approach." Under that approach, "if the two claims or theories are based upon the same set of facts and one would

expect them to be tried together ordinarily, then a party must bring them simultaneously. … All matters which were litigated or *could* have been litigated in the earlier case 'are conclusive in the subsequent proceeding.'" *Id.* (citations omitted).

Dr. Clark was the only named plaintiff in the First State Court Action, but Maryland courts generally recognize that family members who knew about the previous litigation and who had an interest in said litigation that was adequately represented by the plaintiff are in privity with the plaintiff for purposes of claim preclusion. *See, e.g., Cochran v. Griffith Energy Servs.,* 43 A.3d 999, 1002–1003 (Md. 2012) (citations omitted); *Jaffree v. Wallace,* 837 F.2d 1461, 1467 (11th Cir.1988) ("Although a familial relationship need not, in and of itself, confer privity status, it does constitute an important factor when assessing the preclusive effects of a prior adjudication."). Ms. Delorme and Paul Clark, Jr. are in privity with Dr. Clark for these purposes. The record also does not contain any evidence to suggest that the First State Court Decision is not final and nonappealable.[14] As such, the real question is whether the allegations of damage to Unit PH4A contained in the Creditors' Claims were or could have been brought in the First State Court Action.

The Second Amended Complaint in the First State Court Action identifies a number of facts that are reasserted by the Creditors in the Claims and, consequently, the Creditors' Motion. For example, the Second Amended Complaint alleges that the Building "has been plagued for years by substantial water infiltration and mold infestation problems caused by leaks in the exterior façade and roof system." Debtor's Third Motion Ex. 7, at ¶ 17. It also explains the Debtor's hiring of a reserve specialist, that specialist's recommendation and report, and the Debtor's failure to follow the recommendations. *Id.* at ¶¶ 18–23. The Second Amended

---

[14] In fact, the Debtor's Second Motion states that the Maryland Court of Appeals denied certiorari in the First State Court Action. Debtor's Second Motion at 13.

Complaint further notes that the Creditors were aware of leaks in the ceiling of Unit PH4A prior to purchasing the unit, that the Debtor indicated the roof was scheduled to be repaired, and that those repairs allegedly were not made. *Id.* at ¶ 27.

In addition to pre-sale activities, the Second Amended Complaint addresses the Creditors' issues with, and complaints regarding, the Debtor and Unit PH4A after the Creditors moved into the unit in November 2009. For example, the Second Amended Complaint explains the MMTS Environmental Report commissioned by the Creditors, the alleged detection of mold from the alleged water damage, and the fact that the Creditors then moved out of Unit PH4A. *Id.* at ¶¶ 30–31. The Second Amended Complaint also details the Creditors' discussions with the Debtor regarding the repair and maintenance of Unit PH4A and alleges that the "Board of Directors has not taken any steps sufficient to properly maintain, repair, or replace the common elements of the [Building or Unit PH4A] to correct and prevent further water and mold damage to the common elements or private residences as required by the By-Laws and the Maryland Condominium Act." *Id.* at ¶¶ 32–33.

The transactional test adopted by Maryland courts is broader than the previous "same evidence" standard used in Maryland. *See Sams v. Jane G. Henderson*, LLC, 2017 WL 1231702, at *5 (Md. Ct. Spec. App. Apr. 4, 2017). "'What factual grouping constitutes a "transaction" and what groupings constitutes a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Norville*, 887 A.2d at 1038 (quoting *FWB Bank v. Richman*, 731 A.2d 916, 927 (Md. 1999)). Courts look to whether the cases arise from a

"'common nucleus of operative fact.'" *Id.* at 109 (quoting *United Mine Workers of America v. Gibbs,* 83 U.S. 715, 725 (1966)).

Considering the allegations in the Second Amended Complaint and those set forth in the Creditors' Claims and the Creditors' Motion, there is little question that the claims asserted in the First State Court Action and those now asserted before this Court with respect to alleged damage to Unit PH4A arise from a common nucleus of operative facts or the same transaction. The transactional test is not, under Maryland case law, limited to a single transaction—e.g., the Creditors' purchase of the unit. Rather, it is focused on the facts alleged in the prior litigation and whether the plaintiff could have also brought additional claims based on the facts, circumstances, forum, and similar considerations relevant at that time. As noted above, the doctrine of claim preclusion is intended to prevent piecemeal legal theories and serial litigation. *Norville*, 887 A.2d at 1038 ("Legal theories may not be divided and presented in piecemeal fashion in order to advance them in separate actions.").

Here, the evidence shows that the Creditors were well aware of all of the facts relating to their claims for breach of fiduciary duty and breach of contract for the alleged damage to, and the Debtor's alleged failure to repair and maintain, Unit PH4A. The plain language of the Second Amended Complaint clearly sets this out. Moreover, the Creditors could have brought the breach of fiduciary duty and breach of contract claims in the state court.[15] The Creditors did not offer evidence to refute these facts, and they have not established a genuine issue of material fact on this basic concept.

The Creditors did argue and presented evidence that their claims for breach of fiduciary duty and breach of contract also relate to new facts and circumstances that were not in existence

---

[15] In this regard, the aspects of the Creditors' Claims included in the Debtor's Third Motion and the Creditors' Motion are different than the FHA Claims and whether the First State Court Action posed a bar to the FHA Claims under the doctrine of claim preclusion. That issue is addressed separately in the FHA Memorandum Opinion.

at the time of the First State Court Action and, thus, could not have formed the basis of any claims or causes of action. *See, e.g.*, Transcript at 167. Likewise, the Debtor argued that many of the issues with Unit PH4A are "new" and not just a continuation of one continuous leak. Transcript at 154–156. Accordingly, the Court will grant the Debtor's request for summary judgment based on the First State Court Action solely with respect to breach of fiduciary duty and breach of contract claims, and any related damages, that could have been brought based on the facts and allegations set forth in the Second Amended Complaint and addressed by the First State Court Decision.

### D.    Creditors' Breach of Fiduciary Duty Claim

The Creditors bring a claim against the Debtor for breach of fiduciary duty. The Creditors assert this claim against the Debtor and not against the Board. The Creditors argue that the Maryland Condominium Act and the Debtor's bylaws impose duties on the Debtor that are fiduciary in nature. Creditors' Motion at 14–17; Creditors' Reply at 8–9. The language of the Maryland Condominium Act and the Debtor's governing documents demonstrate that the Debtor owes some duties to unit owners. As the Creditors further acknowledge, however, "Maryland does not recognize a separate tort action for breach of fiduciary duty." *International Brotherhood of Teamsters*, 802 A.2d 1050, 1051 n.1 (Md. 2002). *See also Wasserman v. Kay*, 14 A.3d 1193, 1219 (Md. Ct. Spec. App. 2011). Rather, "the breach of a fiduciary duty may give rise to one or more causes of action, in tort or in contract." *Id*.

At the Hearing, the Creditors' lawyer acknowledged that neither the Creditors' Claims nor the various pleadings include any state law tort causes of action.[16] Transcript at 171–172.

---

[16] The Creditors' Motion grounds the breach of fiduciary duty claim in alleged breaches of the Debtor's bylaws and Maryland law, asserting that the Debtor breached its duties "by [not] properly funding reserves, ignoring repeated studies, and not promptly repairing the damage to the Creditors' Unit." Creditors' Motion at 18. These allegations are akin to those asserted by the Creditors to support their breach of contract claim. Although the Creditors' Reply,

The Claims relating to damage to Unit PH4A are based on breach of fiduciary duty and breach of contract theories.[17] Accordingly, the Court finds it appropriate to merge the breach of fiduciary duty claim into the Creditors' breach of contract claim, and the two claims will be considered together in this Memorandum Opinion and at trial. *See, e.g.*, *Vinogradova v. Suntrust Bank, Inc.*, 875 A.2d 222, 231 (Md. Ct. Spec. App. 2005) (explaining that "under Maryland law, the two separately pleaded claims in [the Plaintiff's] complaint condense to only one: the claim based on the tort of negligence"); *G.M. Pusey and Assocs., Inc. v. Britt/Paulk Ins. Agency, Inc.*, 2008 WL 2003747, at *6 (D. Md. May 6, 2008). Accordingly, the Court will consider alleged breaches of fiduciary duty as part of the Creditors' breach of contract claim, but will rule only on the cause of action recognized by Maryland law—i.e., the breach of contract claim.

### E.   Creditors' Breach of Contract Claim

As explained in Part V.C, part of the Creditors' breach of contract claim is barred under the doctrine of claim preclusion. Nevertheless, the record contains evidence of water leaks and damage to Unit PH4A subsequent to the First State Court Decision. For example, Ms. Jocelyn Peoples, a portfolio manager at Barkan Management who worked with the Debtor from April 8, 2013, through May 10, 2016, testified that there were periodic leaks in Unit PH4A during her tenure. Creditors' Third Opposition Peoples Depo. Ex. 74, at 14–15. Ms. Peoples further testified that these leaks came from different sources, such as a skylight in one of the bedrooms in Unit

---

[17] in suggesting that the Creditors' breach of fiduciary claim is different than one against corporate directors, states that the Creditors' "cause of action sounds not in equitable relief, but in common law breach of contract and negligence," the Creditors do not assert a separate negligence cause of action. Creditor's Reply at 11. As the Maryland Court of Appeals explained, "Counsel are required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem." *Kann v. Kann*, 690 A.2d 509, 521 (Md. 1997). Here, the Creditors identify the Debtor's duties and the breach of those duties as arising from the Debtor's bylaws. Creditors' Motion at 15–16.

[17] The Creditors' Motion does argue that "Maryland law allows for a number of areas of damages for breach of contract and/or negligence that arises under a contract in which the offending party acts as a fiduciary." Creditors' Motion at 21. This statement does not articulate a cause of action for negligence. Nevertheless, given that the issue of damages will be heard at trial, the Court will consider the parties' respective arguments on applicable damages, if any, in the Contested Matter in the context of the trial. *See infra* Part V.G.

PH4A and another from a sprinkler pipe break. *Id.* at 15–16. She explained that there would be leaks in the unit within days of rain, but that she could not determine exactly when the leaks occurred because the Debtor did not always have access to the unit the day of the event. *Id.* at 17.

Likewise, Mr. V.J. Impallaria, who was a facilities manager at Barkan Management and had worked with the Debtor since 2008, testified that, at the time of his deposition in September 2017, there were still water leaks in Unit PH4A. Creditors' Third Opposition Impallaria Depo. Ex. 87 at 14–17, 39–40, 44–47. He noted that the water leaks continued in Unit PH4A after the Debtor completed the façade and roof project. *Id.* at 16. Mr. Impallaria explained the various issues with Unit PH4A over the years, including the Debtor's challenges in getting access to the unit. *Id.* at 14–17, 44–47.[18]

Under Maryland law, "[t]he elements of a cause of action for breach of contract include the existence of a contractual obligation, a material breach of that contractual obligation, and resulting damages." *See Burdyck,* 2015 WL 7739737 at \*3 (Md. Ct. Spec. App. Dec. 1, 2015) (citing *Kumar v. Dhanda,* 198 Md. App. 337, 345 (Md. Ct. Spec. App. 2011)). The Debtor's bylaws require the Debtor to repair, maintain, and replace (under certain circumstances) all of the common elements associated with the Building. Creditors' Motion Ex. 3, §1, Art. XII. *See also Greenstein v. Council of Unit Owners of Avaion Court,* 29 A.3d 604, 615, 616 (Md. Ct. Spec. App. 2011) ("By virtue of the Council's exclusive control over the Common Elements of which appellants, as individual unit owners, have no control, a duty arises in the Council to act in regards to the Common Elements on behalf of the individual unit owners.") The parties do not present evidence disputing that the Debtor's bylaws constitute a contract between at least the

---

[18] The record contains additional evidence of ongoing water leaks affecting Unit PH4A. For example, see Creditors' Third Opposition Ex. 88; Creditors' Motion Exs. 29–34; Creditors' Third Opposition Williams Depo. Ex. 70, at 9–10. As explained herein, this Memorandum Opinion does not address any potential defenses, such as the source of certain of the leaks or access to the unit to address the leaks. All defenses will be addresses at trial.

Debtor and Dr. Clark.[19] *See also MRA Property Management v. Armstrong*, 43 A.3d 397, 408 (Md. 2012). The Debtor does dispute, however, that it breached its obligation to repair and maintain the common elements of the Building.

The Court finds that the Debtor has not presented evidence to create a genuine issue of material fact regarding whether the Debtor breached the bylaws with respect to its duty to repair and maintain the common elements, as those common elements impact Unit PH4A. The Debtor has, however, offered evidence and arguments supporting potential defenses to that alleged breach of duty (including, for example, that the Debtor did not have access to complete necessary repairs or maintenance), as well as the amount of damages, if any. Accordingly, nothing in this Memorandum Opinion or the related Order precludes the Debtor from presenting evidence and arguments at trial concerning (i) any and all defenses the Debtor has to a breach of contract claim based on facts arising after the First State Court Decision; and (ii) the amount of damages, if any, not covered by a valid defense, including evidence and arguments on mitigation. The Court thus grants the Creditors summary judgment on their breach of contract claim on this limited basis.

### F.    Creditors' Claims for Attorney's Fees and Punitive Damages

The Creditors' Claims also seek attorney's fees and punitive damages. The Creditors' lawyer clarified at the Hearing that the claim for attorney's fees related only to the FHA Claims. Transcript at 170. The substance of that claim is, accordingly, addressed in the FHA Memorandum Opinion. The Creditors' claim for punitive damages is likewise limited to claims based on violations of the FHA or a breach of fiduciary duty claim grounded in state tort law. *See also* Transcript at 170–171. The punitive damages claim relating to the FHA Claims is

---

[19] As noted at Part V.B, the Court is not deciding the issue of third-party beneficiaries to the contract by this Memorandum Opinion, and the Court recognizes that the Debtor disputes this theory.

addressed in the FHA Memorandum Opinion. Also, as noted in Part V.D above, the Creditors have not alleged a state law tort claim relating to the breach of fiduciary duty claim.

Under Maryland law, a plaintiff cannot recover punitive damages for breach of contract claims.[20] *See, e.g., Miller Bldg. Supply, Inc. v. Rosen*, 485 A.2d 1023, 1027 (Md. Ct. Spec. App. 1985), *aff'd*, 503 A.2d 1344 (Md. 1986); *Am. Laundry Machinery Indus. v. Horan*, 412 A.2d 407, 416 (Md. Ct. Spec. App. 1980). This reasoning applies with equal force to breaches of fiduciary duty giving rise to a breach of contract claim. As a result, the Court will grant those aspects of the Debtor's Third Motion requesting summary judgment on the Creditors' Claims relating to attorney's fees and punitive damages.

### G.    Other Damages and Remaining Issues

The parties dispute both the kind and amount of damages available to the Creditors for any breach of contract that withstands any valid defenses. The record demonstrates genuine issues of material fact on all aspects of these damages issues. Accordingly, the Court will deny all remaining requests for summary judgment in the Debtor's Third Motion and the Creditors' Motion, which primarily relate to damages issues (other than the attorney's fees and punitive damages addressed in Part V.F).

That said, the Court offers a brief explanation of the legal standards governing potential damages for breach of contract in this Contested Matter to assist the parties in preparation for trial. In Maryland, "[i]n a breach of contract action, upon proof of liability, the non-breaching party may recover damages for 1) the losses proximately caused by the breach, 2) that were

---

[20] The Court notes that even if the Creditors had pled a cause of action that would permit a punitive damages award, the record does not create any genuine issue of material fact on that issue. As the Creditors note in the Creditors' Motion, Maryland law requires conduct that rises to the level of gross fraud, or malice and willfulness. Creditors' Motion, at 23 (citing *Homa v. Friendly Mobile Manor*, 612 A.2d 322, 331–332 (Md. 1992)). *See also Horan*, 412 A.2d, at 416–417. As set forth in this Memorandum and the FHA Memorandum Opinion, the evidence does not show discrimination or ill motive in the context of the repairs and maintenance of Unit PH4A. It likewise does not show malice, gross fraud, or other extraordinary or exceptional circumstances. Accordingly, the record itself also supports the Debtor's request for summary judgment on the Creditors' punitive damages claim.

reasonably foreseeable, and 3) that have been proven with reasonable certainty." *Hoang v. Hewitt Ave. Assocs., LLC*, 936 A.2d 915, 934 (Md. Ct. Spec. App. 2007) (citing *Impala Platinum, Ltd. v. Impala Sales, Inc.,* 389 A.2d 887 (Md. 1978); *Stuart Kitchens, Inc. v. Stevens,* 234 A.2d 749 (Md. 1967) (citing to Restatement (First) Of Contracts §§ 330, 331))). Thus, the nonbreaching party may recover both general and consequential damages for such a breach of contract claim.[21]

Maryland courts follow the guidelines for general and consequential damages established in *Hadley v. Baxendale*, 9 Exch. 341 (1854). Under this approach, "the non-breaching party is entitled to compensatory damages which are the natural and proximate consequence of the breach, or which are reasonably within the parties' contemplation at the time of contracting." *Cook v. SCI Maryland Funeral Servs. Inc*., 2016 WL 890298 (D. Md. Mar. 9, 2016). In addition, the nonbreaching party may also claim consequential damages, and such damages "are not presumed to have been in the contemplation of the parties when they made their contract but may be shown from evidence of the particular circumstances to have been in their contemplation." *Hoang*, 936 A.2d at 935 (discussing, among other things, Maryland law on lost profits).

At the Hearing, the Creditors' lawyer explained the Creditors' damages claim as a claim for damage to Unit PH4A—a chattel. Transcript at 172–173. A "'[c]hattel' is defined as '[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property.'" *Moore v. Myers*, 868 A.2d 954, 965 (Md.

---

[21] The Maryland Court of Special Appeals provides a thorough review of general and consequential damages under Maryland law in *Hoang*, 936 A.2d at 934–935. *See also Natural Product Solutions, LLC v. Vitaquest Int'l, LLC*, 2014 WL 6383482, at *6–*8 (D. Md. Nov. 13, 2014) (explaining damages under Maryland law and that "Maryland courts have adopted the rule in *Hadley v. Baxendale*, 9 Exch. 341 (1854)"). In addition, Maryland law recognizes the concept of mitigation with respect to breach of contract damages. *See, e.g., Natural Products Solutions*, 2014 WL 6383482, at *7 ("Under Maryland law, a nonbreaching party must 'make all reasonable efforts to minimize the loss sustained from the breach' and can recover only those damages it reasonably could not prevent.") (citing *Circuit City Stores, Inc. v. Rockville Pike Joint Venture, Ltd.*, 829 A.2d 976, 990 (Md. 2003)). *See also Iron Horse Farms, Inc. v. Raylyn Farms, Inc.*, 2017 WL 1316059, at *7–*8 (Md. Ct. Spec. App. 2017).

2005) (quoting Black's Law Dictionary 251 (8th ed. 2004)), *holding modified on other grounds by Tracey v. Solesky*, 50 A.3d 1075 (Md. 2012). The Creditors, in turn, rely on case law awarding loss of use damages with respect to chattels. *See, e.g.*, Creditors' Reply at 15. Maryland case law awarding loss of use damages, however, generally involves causes of action sounding in tort.[22] To the extent the Creditors are pursuing loss of use damages, and the Debtor is opposing such damages, the parties should address the application of loss of use damages in the breach of contract setting in their respective pre-trial memoranda. The parties also should consider any potential overlap in damages claimed under any theory, as Maryland law "'recognize[s] that there can be only one recovery of damages for one wrong or injury.'" *Montgomery Ward & Co. v. Cliser*, 298 A.2d 16, 26 (Md. 1972) (quoting 25 C.J.S. Damages § 3).

The foregoing general principles and other applicable Maryland law will guide the Court in its analysis of the Creditors' remaining damages claims, after considering any valid defenses, in this Contested Matter.

## VI.    Conclusion

For all of the forgoing reasons, the Court grants in part, and denies in part, the Debtor's Third Motion and the Creditors' Motion. The Court grants summary judgment as requested by the Debtor's Third Motion with respect to (i) the Creditors' breach of fiduciary duty and breach of contract claims, and any related damages, based on facts, allegations, or conduct arising on or prior to February 23, 2012; and (ii) the Creditors' request for attorney's fees and punitive damages. The Court grants summary judgment as requested by the Creditors' Motion with respect to the Debtor's breach of its duty to maintain and repair Unit PH4A, solely with respect

---

[22] The Court notes that, even in the context of a tort cause of action, carrying charges do not appear to be recoverable under Maryland law. *See Yaffe,* 45 A.3d at 853–854.

to facts and conduct occurring after February 23, 2012. The Court is not granting summary judgment or any relief on the remaining aspects of these motions, including whether Ms. Delorme or Paul Clark, Jr. is a third party beneficiary of the contract, or whether the Debtor has any valid defenses to the breach of contract claim or, if no comprehensive defense, the amount of the Creditors' damages. Those issues will proceed to trial as previously scheduled in this contested matter. The Court will enter a separate Order consistent with this Memorandum Opinion.


**Copies to:**      Paul Sweeney
                    Lisa Stevens
                    Brennan McCarthy

## END OF MEMORANDUM OPINION