IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| PAUL C. CLARK, SR., *et al.*, | * | |
| Appellants, | * | |
| v. | * | Civil Case No.: SAG-18-03542 |
| COUNCIL OF UNIT OWNERS OF THE 100 HARBORVIEW DRIVE CONDOMINIUM, | * | |
| Appellee. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This appeal results from the reorganization of the Council of Unit Owners of The 100 Harborview Drive Condominium ("Appellee") in Chapter 11 bankruptcy proceedings before the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court"). Dr. Paul C. Clark, Sr., Rebecca Delorme, and Paul C. Clark, Jr. ("Appellants") appeal several orders of the Bankruptcy Court. Now pending is Appellee's motion to dismiss the appeal on the grounds of equitable mootness ("the Motion"). ECF 15. I have reviewed the Motion, Appellants' Opposition, ECF 18, and Appellees' reply, ECF 20. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Appellee's motion to dismiss is **GRANTED,** and the appeal is **DISMISSED** as equitably moot.

### I.   Factual Background

Appellee is an unincorporated condominium association comprised of "any person, firm, corporation, trust, or other legal entity … holding title to a condominium unit" located at 100 Harborview Drive, a 29-story luxury residential high rise at Baltimore's Inner Harbor. Order Confirming Debtor's Fifth Amended Plan of Reorganization, ECF 6-34 at 2. Appellee filed a

petition for Chapter 11 bankruptcy on March 9, 2016. *Id.* Appellee sought Chapter 11 reorganization in part to resolve years of litigation involving two units in the building. *Id.* Appellant Paul C. Clark is the owner of one of those units, a penthouse ("Unit PH4A"), located in the high rise. *Id.* Appellee and Appellants have an extensive, decade-long litigation history concerning Unit PH4A. Indeed, the Bankruptcy Court noted the extensive tension between the two parties. *See* Preliminary Order Regarding Creditors' Damages Claim, ECF 6-35 at 11 (explaining that past lawsuits have concerned the parties' "truthfulness, trustworthiness, and civility").

Relevant here, Appellants filed several claims against Appellee as part of the Chapter 11 process, collectively asserting more than $25 million in damages. ECF 6-34 at 4–5. The claims related to pre-petition litigation between the parties, alleging violations of the Fair Housing Act ("FHA"), property damage to Unit PH4A, and consequential and other damages allegedly resulting from these claims. *Id.* Appellee filed objections to these claims, *id.* at 5, and Appellants, correspondingly, filed an opposition to the objections. ECF 6-35 at 3. The Bankruptcy Court granted Appellee's motion for partial summary judgment with respect to the FHA Claims. *Id.* at 4.[1] After a multi-day trial on the remaining issues, the Bankruptcy Court issued its Preliminary Order on April 10, 2018. ECF 6-35. On the same day, the Bankruptcy Court issued its order ("Confirmation Order") confirming Appellee's Fifth Amended Plan of Reorganization ("Confirmed Plan"). ECF 6-34. The Bankruptcy Court promptly issued a notice setting May 1, 2018 as the "Effective Date" for the Confirmed Plan. ECF 6-37.

---

[1] The Bankruptcy Court also addressed three other dispositive motions filed by the parties. The court determined, for example, that Appellants' breach of fiduciary duty and breach of contract claims, arising from conduct prior to February 23, 2012, are barred under *res judicata* due to a 2012 state court decision in *Clark v. Zalco Realty, Inc.*, 24-C-10-007236 (Cir. Ct. Balt. City).

2

The Confirmed Plan established Appellee's obligations with respect to several classes of creditors. Since the Effective Date, Appellee has engaged in numerous transactions with these parties, totaling more than $2.8 million. ECF 15 at 7. For instance, Appellee was required to make several lump-sum payments to creditors in Class 1, including an interest only payment in the amount of $27,595.23, on or before May 1, 2018. Affidavit of Michael A. Feltenberger, ECF 15-1 at 2. Appellee made this payment on April 19, 2018. *Id.* Additionally, the Confirmed Plan established payment schedules with respect to several groups of creditors, including: three equal monthly installments to Class 3 creditors on May 31, 2018, June 29, 2018, and July 30, 2018, respectively. *Id.* at 3–4. Appellee completed all of these payments, in an amount totaling approximately $448,345.77. *Id.* at 4. The Confirmed Plan also codified the settlement of claims with Class 4 creditors involving a second unit in the building: Unit PH4C. Appellee paid approximately $1.1 million to the Class 4 creditors, including a lump-sum payment and several escrowed monthly payments in 2017 and 2018. *Id.* at 4. In accordance with the agreement, the Class 4 creditors transferred title for Unit PH4C to Appellee's designee. *Id.*

The Confirmed Plan identified Appellants as Class 7 creditors, and it expressly stated that damages relating to Appellants' FHA claims had been denied and were excluded from the Plan. ECF 6-31 at 30 n.4 ("Class 7 claims exclude damages denied by the Court pursuant to the Order and Memorandum Granting Debtor's Second Motion for Partial Summary Judgment … and Order and Memorandum Granting in Part, and Denying in Part, Debtor's Third Motion for Partial Summary Judgment and Creditor's Motion for Partial Summary Judgment"). Since Appellants' claims involved ongoing damage caused by leakage in Unit PH4A, the Confirmation Order explained that the amount of Appellants' claims "are governed by the Preliminary Damages Order and any further order of the Court finalizing the matters addressed by the Preliminary Damages

3

Order." ECF 6-34 at 36 n.33. In the Preliminary Damages Order, the Bankruptcy Court found that Appellee had breached its contract with Appellants, and awarded Appellants $731,000 as "set damages" plus $6,000 per month in "ongoing damages." ECF 6-35 at 33. This amount was significantly below Appellants' request, because the court found that Appellants had failed to mitigate damages, and it decreased their award accordingly. *See id.* at 22–25. However, "[b]ecause of the potential adjustments to the future damages award, the Court issue[d] this Order as a preliminary ruling, subject to a final Order once all damages are ascertained." *Id.* at 33. After an evidentiary hearing to assess "substantial remediation" of damage in Unit PH4A, the Bankruptcy Court issued its Final Order regarding Appellants' damages claim on October 16, 2018. ECF 6-51. The Court maintained the set damages amount at $731,000, and finalized the ongoing damages at $19,552, for a total aggregate amount of $750,552.00. *Id.* at 12–13. Appellants filed their notice of appeal to this Court on October 30, 2018. ECF 1. Appellee moved to dismiss the appeal on the grounds of equitable mootness. *See* Fed. R. Bankr. P. 8013.

## II. Appellee's Motion to Dismiss

### A. Legal Standard

This court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158. On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992).

### B. Equitable Mootness

Equitable mootness "is a pragmatic doctrine 'grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable.'" *In re Bate Land & Timber LLC*, 877

F.3d 188, 195 (4th Cir. 2017) (quoting *Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002)). The Fourth Circuit has identified four factors that courts should evaluate to determine whether an appeal should be dismissed as equitably moot:

> (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Mac Panel*, 283 F.3d at 625.

Courts must consider "the totality of [the] circumstances," *id.* at 625, and the question is whether these factors, taken together, suggest that it would be imprudent to disturb the reorganization plan at this late date,[2] *see Mar-Bow Value Partners v. McKinsey Recovery & Transformation Servs. US*, 578 B.R. 325, 348 (E.D. Va. 2017). Applied here, all four factors cut in favor of dismissing the appeal as equitably moot.

### 1. Whether the Appellant Sought and Obtained a Stay

Factor one weighs strongly in favor of a finding of equitable mootness. Appellants did not attempt to stay the implementation of the Confirmed Plan. Case law illustrates the significant weight that courts place on a party's diligence in preventing implementation of a reorganization plan. *See In re Shawnee Hills, Inc.*, 125 F. App'x 466, 470 (4th Cir. 2005) (per curiam) ("It is well-settled that the failure of a party to seek a stay of a bankruptcy order can alone render further appeal moot."). For example, in *In re U.S. Airways Group, Inc.*, 369 F.3d 806 (4th Cir. 2004),

---

[2] This Court is aware of some recent criticism of the doctrine of equitable mootness. *See In re One2One Commc'ns, LLC*, 805 F.3d 428, 438–54 (3d Cir. 2015) (Krause, J., concurring) (urging court to "revisit" equitable mootness doctrine); *but see In re Allied Nevada Gold Corp.*, 725 F. App'x 144, 151 (3d Cir. 2018) (affirming dismissal of claims as equitably moot); *In re City of Stockton, Cal.*, 909 F.3d 1256, 1265–66 (9th Cir. 2018) (dismissing direct appeal as equitably moot). Presently, this doctrine remains viable, and district courts continue to apply it forcefully within the Fourth Circuit. *See, e.g.*, *Dandridge v. Scott*, 2019 WL 4228457, at *3 (W.D. Va. Sep. 5, 2019) ("[E]ven if the appellant could satisfy the standing requirements, his appeal would be subject to dismissal as equitably moot."); *Kaur v. Wells Fargo Bank*, 2017 WL 5466812, at *3 (D. Md. Nov. 14, 2017) ("[T]o the extent that Kaur appears to argue that her appeal is not equitably moot, her argument is unavailing.").

5

U.S. Airways filed a voluntary petition for Chapter 11 reorganization. *Id.* at 807. As part of the reorganization plan, the airline obtained approval to terminate an existing pension plan and to substitute it with a new plan for its active and non-retired pilots. *Id.* at 809. When the Retired Pilots Association appealed the bankruptcy court's termination order to the district court, the court dismissed its challenge as equitably moot. *Id.* On appeal, the Fourth Circuit affirmed the dismissal for equitable mootness. *Id.* at 811. Regarding factor one, the court found it "significant that appellant never sought to obtain a stay of any kind." *Id.* at 809. The court elaborated on this omission:

> Appellant also did not attempt either to stay the confirmation order or to prevent implementation of the reorganization plan. Instead, appellant sat idly by as U.S. Airways executed the termination order and implemented its reorganization plan by completing hundreds of transactions with third parties.

*Id.* at 809–10.

This case presents a similar situation. In fact, Appellants had two distinct opportunities to request a stay. In the Order approving the Confirmed Plan, the Bankruptcy Court explained that Appellants' claims would be governed by the Preliminary Damages Order and, ultimately, by a final order. Accordingly, the Bankruptcy Court finalized Appellants' damages claim on October 16, 2018. Appellants failed to seek a stay of the Confirmed Plan's implementation both (1) after issuance of the Preliminary Damages Order in April, 2018, and (2) after issuance of the Final Order in October, 2018.

Appellants suggest that they were unable to seek a stay after issuance of the Preliminary Damages Order because the Confirmed Plan did not finalize the amount they would receive for their claims. *See* Appellants' Response in Opposition to MTD, ECF 18 at 5. However, the Preliminary Damages Order provided sufficient reason for Appellants to pursue a stay in the Bankruptcy Court, to the extent they wished to appeal the ruling on their FHA claims. The

Preliminary Damages Order expressly incorporated the Bankruptcy Court's ruling in favor of Appellee on those claims. ECF 6-35 at 4; *see also* Order Granting Debtor's Second Motion for Partial Summary Judgment, ECF 1-10. Thus, Appellants knew that any finalized amount would not include damages for the FHA claims. And, since the Preliminary Damages Order finalized Appellee's obligations with respect to several other classes of creditors, Appellants had ample notice to seek a stay of the reorganization plan's fulfillment at that time, to permit the appeal of the FHA ruling Appellants now seek.

Importantly, courts have deemed factor one to cut in favor of equitable mootness even when parties have tried, unsuccessfully, to seek a stay. *See, e.g.*, *Cadle Co. II v. Calvert Vill.*, 203 F.3d 819 (4th Cir. 2000) (per curiam) (explaining that implementation of the reorganization plan continued since the appellant failed to appeal the *denial* of its motion for a stay). In the instances where courts have found that an appeal is not equitably moot, the appellants typically have not only sought a stay, but also obtained one. *See, e.g.*, *Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 713 (4th Cir. 2011) ("First, Appellants sought and obtained a stay, although limited in scope, and then were rebuffed in their efforts to obtain a further stay pending appeal."). Here, in the absence of even an attempt to obtain a stay, Appellee has engaged in numerous transactions, and has paid over $2.8 million to various groups of creditors since April, 2018.

### 2. Substantial Consummation of Reorganization Plan

Due to the significant steps undertaken by Appellee since the Effective Date, factor two also cuts in favor of a finding of equitable mootness. "Substantial consummation" is defined by statute to require three events:

> (A) Transfer of all or substantially all of the property proposed by the plan to be transferred;

> (B) Assumption by the debtor or the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) Commencement of distribution under the plan.

11 U.S.C. § 1101(2).

In *Mac Panel v. Virginia Panel Corp.*, 283 F.3d 622 (4th Cir. 2002), MAC Panel initiated Chapter 11 bankruptcy proceedings after the company's primary competitor obtained a judgment against it in a patent infringement case. *Id.* at 623. After the bankruptcy court approved the company's reorganization plan, the competitor appealed to the district court. *Id.* at 624. However, the district court dismissed the appeal as equitably moot, and the Fourth Circuit affirmed. In evaluating the second factor, the panel found that all three elements of § 1101(2) had occurred. *Id.* at 626. Specifically, MAC Panel had settled disputed claims, had paid at least 19 creditors, and, with respect to its operations, "ha[d] emerged from bankruptcy as a viable company." *Id.*

Similarly, all three elements are satisfied here. To date, Appellee has disbursed more than $2.8 million among several groups of creditors. Furthermore, pursuant to the Confirmed Plan, Appellee paid $1.1 million to Class 4 creditors and, in exchange, received title to Unit PH4C. In addition to executing its responsibilities under the Confirmed Plan, Appellee has continued to operate its condominium association for more than 15 months since the Effective Date. *See* ECF 15-1 ("The Reorganized Debtor is faithfully executing its obligations under the Confirmed Plan and is operating in the ordinary course of business."). Appellants do not dispute that Appellee has taken any of these steps. *See* ECF 18; *see also Alexander v. Barnwell Cty. Hosp.*, 498 B.R. 550, 559–60 (D.S.C. 2013) (concluding that § 1101(2) was satisfied where the appellant did not dispute substantial consummation). Collectively, these facts illustrate that the Confirmed Plan has been substantially consummated.

3. **Effects on Success of Reorganization Plan and Interests of Third Parties**

Factors three and four invite similar analysis, thus courts frequently consider them in tandem. *See, e.g.*, *In re Bate Land & Timber*, 877 F.3d at 195–96 ("[T]he third and fourth factors are particularly important to determining whether it would be impractical, imprudent, or inequitable to provide the requested relief."). In *Bate Land & Timber*, the bankruptcy court confirmed Bate's reorganization plan after Chapter 11 proceedings. *Id.* at 194. Although the district court dismissed the appeal as equitably moot, the Fourth Circuit reversed. The court explained that Bate's reorganization plan "essentially present[ed] a two-party dispute." *Id.* at 196. Since the appellant was Bate's largest secured creditor, the "Confirmed Plan would not be disturbed in any material way" by affording the relief sought. *See id.* at 196. Here, by contrast, the Chapter 11 proceedings involved adjudication of claims from multiple creditors. For instance, the Confirmed Plan provided for settlement of a million-dollar claim by the Class 4 creditors. As explained above, Appellee paid approximately $1.1 million to these creditors in order to receive title for the PH4C unit. In total, Appellants' current award represents a mere fraction of the more than $2.8 million paid to all creditors thus far.

The *Bate Land & Timber* court emphasized that the interests of other creditors would not be affected. *See* 877 F.3d at 196 ("Moreover, the fact that BLC's appeal would not alter the recovery of any other creditor or damage the interests of any party who has contracted with the Debtor means that the 'relief requested on appeal' would not 'affect the interests of third parties.'"). Here, by definition, the requested relief would adversely impact other creditors. Appellee has already engaged in transactions, totaling millions of dollars, with creditors that finalized their rights in the Confirmed Plan. It would be inequitable for this Court not only to nullify two years of Chapter 11 reorganization, but potentially also to disgorge third-parties of funds already dispersed to them in accordance with the Confirmed Plan.

Appellants contend that they seek limited relief, *i.e.*, an appeal of their own claims, rather than a complete reversal of the reorganization plan. ECF 18 at 6–7. However, this portrayal is belied by the nature of their appeal. Appellants seek, *inter alia*, reversal of the Bankruptcy Court's grant of summary judgment to Appellees for alleged violations of the FHA. With these FHA claims included, Appellants have sought more than $25 million in damages. *See* Appellants' Br., ECF 13 at 17–20. In fact, Appellants ask this Court to vacate the Bankruptcy Court's entire judgment, and to refer the matter for arbitration. *Id.* at 14–17 ("[T]he judgment of the Bankruptcy Court should be vacated and this matter referred to arbitration accordingly."). If this Court and/or subsequent arbitrators were to grant Appellants the relief they seek, it would undoubtedly undermine the reorganization plan and adversely affect the interests of multiple third parties. Satisfaction of a judgment of more than $25 million, which would dwarf the total owed to other creditors, might require disgorgement of all, or a significant portion of, the $2.8 million already paid. Disgorgement of funds paid to Class 4, in particular, would necessitate the transfer of title — for Unit PH4C — back to the creditors, which may prove practically impossible. At best, granting relief to Appellants would "undo the success of the reorganization plan and would adversely affect third parties who have already been paid." *Mac Panel*, 293 F.3d at 626.

In addition to potentially impairing the rights of third-party creditors, granting relief to Appellants would also undermine the interests of other unit owners. Unit owners have continued to pay their annual and special assessments in reliance upon the Confirmed Plan. ECF 15-1 at 6–7 (explaining that Appellee collected approximately $4.1 million in annual assessments in 2018). In *U.S. Airways Group*, the court found it critical that affording the requested relief would frustrate a variety of post-bankruptcy reliance interests. 369 F.3d at 810 ("For example, U.S. Airways has contracted with Bank of America to process the company's credit card transactions."). Annual

assessments are the primary funding source for Appellee to effectuate the Confirmed Plan, and unit owners have continued to pay these fees in reliance upon the "finality of bankruptcy confirmation orders." *See id.* at 810–11. The Confirmed Plan, in this case, expressly excluded Appellants' FHA claims, and putting more than $25 million in damages back in dispute would materially affect the unit owners' interests in the finality of the reorganization.

In sum, providing relief to Appellants would harm the interests of third-party creditors and other unit owners, and would nullify the success that has already been achieved under the Confirmed Plan. Ultimately, "[i]t is simply too late in the day to unwind the intricate series of transactions that has occurred in the reorganization process in order to grant the requested relief." *See id.* at 811.

### III.  Conclusion

Because all four *Mac Panel* factors suggest that the appeal should be dismissed as equitably moot, I shall grant Appellee's Motion to Dismiss, ECF 15. A separate Order follows.

Dated: September 25, 2019              /s/
                                       Stephanie A. Gallagher
                                       United States District Judge