# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| PAUL C. CLARK, SR., *et al.*, | * |
| Appellants, | * |
| v. | *   Civil Case No.: SAG-19-01437 |
| MONIQUE S. ALMY, | * |
| Appellees. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This appeal results from the reorganization of the Council of Unit Owners of The 100 Harborview Drive Condominium ("Reorganized Debtor" or "Council") in Chapter 11 bankruptcy proceedings before the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court"). The Bankruptcy Court awarded damages to Paul C. Clark, Sr., Rebecca Delorme, and Paul C. Clark, Jr. ("Appellants" or "Creditors") during the Chapter 11 reorganization process. Monique Almy ("Almy" or "Plan Officer") and the Reorganized Debtor (together "Appellees") sought a clarification that the Bankruptcy Court's damages award did not address Appellants' responsibility for paying assessment fees at the condominium. The Bankruptcy Court issued an Order, as requested by Appellees ("Clarification Order"). I have reviewed Appellees' Motion to Dismiss,[1] ECF 4, Appellants' brief, ECF 12, Appellees' brief, ECF 18, and Appellants' reply brief, ECF 20. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth

---

[1] The Reorganized Debtor filed a motion to join the Plan Officer's Motion to Dismiss the appeal. ECF 8. Because that motion for joinder has not been opposed on its substance and has no effect on the outcome, it will be granted.

below, Appellees' Motion to Dismiss is DENIED in part and GRANTED in part, and the Bankruptcy Court's decision is **AFFIRMED**.

I.  **Factual Background**[2]

Reorganized Debtor is an unincorporated condominium association comprised of "any person, firm, corporation, trust, or other legal entity … holding title to a condominium unit" located at 100 Harborview Drive, a 29-story luxury residential high rise at Baltimore's Inner Harbor. ECF 18 at 2. Reorganized Debtor filed a petition for Chapter 11 bankruptcy on March 9, 2016. *Id.* It sought Chapter 11 reorganization in part to resolve years of litigation involving two units in the building. *See id.* Appellant Paul C. Clark is the owner of one of those units, a penthouse ("Unit PH4A"), located in the high rise. ECF 12 at 2. The Council and the Creditors have an extensive, decade-long litigation history concerning Unit PH4A. *See* ECF 3-1 at 2 n.3 (noting that the parties stipulated at trial to their extensive litigation history).

Appellants filed several claims against the Council as part of the Chapter 11 process, collectively asserting more than $25 million in damages. ECF 3-1 at 10. The claims related to prepetition litigation between the parties, alleging violations of the Fair Housing Act ("FHA"), property damage to Unit PH4A, and consequential and other damages allegedly resulting from these claims. *Id.* The Council filed objections to these claims, and Appellants, correspondingly, filed an opposition to the objections. *Id.* at 3 n.4. After a multi-day trial, the Bankruptcy Court issued its Preliminary Order on April 10, 2018. *Id.* at 3. On the same day, the Bankruptcy Court issued its order ("Confirmation Order") confirming the Council's Fifth Amended Plan of Reorganization ("Confirmed Plan"). *Id.* at 1.

---

[2] A more comprehensive factual background is available in this Court's memorandum opinion in *Paul C. Clark v. Council of Unit Owners of the 100 Harborview Drive Condominium*, Civil No. 18-03542, 2019 WL 4673434, at *1–2 (D. Md. Sep. 25, 2019).

2

The Confirmed Plan established Reorganized Debtor's obligations with respect to several classes of creditors. For instance, the Plan identified Appellants as Class 7 creditors. In the Preliminary Damages Order, the Bankruptcy Court found that the Council had breached its contract with Appellants, and awarded Appellants $731,000 as "set damages," plus $6,000 per month in "ongoing damages." ECF 3-1 at 2. However, the court held a further evidentiary hearing on the status of repair and remediation of the unit. *Id.* at 3. After this hearing, the Bankruptcy Court issued its Final Order regarding Appellants' damages claims on October 16, 2018. *Id.* The Court maintained the set damages amount at $731,000, and finalized the ongoing damages at $19,552, for a total aggregate amount of $750,552. *Id.*

In the Confirmed Plan, the court appointed Monique Almy as Plan Officer. *Id.* at 1. She was responsible for implementing the Plan with respect to Class 7 claims. *Id.* On April 5, 2019, Almy, in her capacity as Plan Officer, filed a Motion for Clarification with the Bankruptcy Court. ECF 4-1. Almy contended that Dr. Clark underpaid assessment fees from October, 2017 through August, 2018, and refused to pay assessment fees for June and October, 2018. ECF 4-1 at 2. According to Reorganized Debtor, Dr. Clark owed $13,925.56 in total for unpaid assessments. *Id.* As his defense, Dr. Clark took the position that the Bankruptcy Court had explicitly rejected any arguments regarding amounts of unpaid assessments. *See* ECF 4-1 at 3 (summarizing letter from Dr. Clark's counsel regarding unpaid fees). Accordingly, the Plan Officer sought for the Bankruptcy Court to determine whether its prior orders had resolved Appellants' liability to pay assessments relating to Unit PH4A. *See generally* ECF 4-1. The Bankruptcy Court granted the motion for clarification on May 1, 2019, and confirmed that its prior orders did not address the Creditors' obligation to pay assessments. *See* Order Granting Plan Officer's Motion for Clarification, ECF 3-1.

Appellants timely filed their notice of appeal, with respect to the Clarification Order ("Order"), on May 16, 2019. ECF 1. However, Appellants filed their supporting brief on July 11, 2019, ECF 12, which was six days after the deadline imposed by Bankruptcy Rule 8018.[3] The Plan Officer filed a Motion to Dismiss the appeal, claiming (1) the appeal is not ripe for judicial review and (2) the appeal brief was untimely under Rule 8018 and Local Rule 404.3. ECF 4.

## II. Threshold Issues

### A. Legal Standard

This court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158. On appeal from the bankruptcy court, the district court acts as an appellate court, and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992).

### B. Ripeness

Appellees contend that this Court lacks subject matter jurisdiction because the Clarification Order is not ripe for review. ECF 4 at 3–4. Because ripeness concerns the Article III case or controversy requirement, I address it first. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (stating ripeness "originates" from Article III's case or controversy language). The doctrine of ripeness "prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006) (citation omitted). In determining whether a case is ripe for judicial review, courts "balance 'the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration.'" *Id.* at 319 (quoting *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002)).

---

[3] The Rule imposes a 30-day deadline from the date of docketing of notice. Docketing of notice occurred on June 5, 2019.

4

In this case, the ripeness issue is best understood by parsing the issues being appealed. First, Appellants argue that the Bankruptcy Court erroneously determined, in the Clarification Order, that its prior orders did not address payment of assessments. In other words, Appellants take the position that any claim for unpaid assessments is "claim precluded" by the Court's Preliminary Damages Order and Final Damages Order. Second, Appellants contend that Reorganized Debtor was required to bring any claim for underpaid assessments as a compulsory counterclaim in the Chapter 11 proceedings. Deciding the first question does not depend on any future uncertainty, rendering it reviewable by this Court. However, the issue of whether Appellants' assessment liability was a compulsory counterclaim, and thus should have been brought in the reorganization proceedings, is not ripe for judicial resolution at this time.

1. **Claim Preclusion**

Considering the first prong of the ripeness inquiry, a case is fit for judicial decision "when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller*, 462 F.3d at 319. In *Lansdowne on the Potomac Homeowners Ass'n v. OpenBand at Lansdowne*, 713 F.3d 187 (4th Cir. 2013), the court rejected arguments that an appeal was not yet ripe. In that case, a homeowner's association sued entities that provided cable service to the home development community. The homeowner's association had entered into an exclusive contractual arrangement with OpenBand, a company that was formed for the purpose of administering telecommunication services to the homeowners. *Id.* at 193–94 (stating the homeowner's association granted an exclusive easement for providing telecommunication services). Eventually, residents complained about the quality of services that OpenBand provided. *Id.* at 194. Even so, when the association started considering alternative companies, such as Verizon and Comcast, these providers expressed concern about the community's exclusivity

agreement with OpenBand. *See id.* at 194. Accordingly, the association sued, alleging that its contractual arrangement with OpenBand violated an order from the FCC. *See id.* at 192 (stating the FCC's *Exclusivity Order* provided that "[n]o cable operator … shall enforce or execute any provision in a contract that grants it the exclusive right to provide any video programming service"). In response, OpenBand claimed that the issue was not ripe for judicial resolution because the company might decide, in the future, to relinquish its claim to the exclusive right to provide video services. *Id.* at 198. The court disagreed, and explained that resolution of the legal issues did not depend on any future uncertainty. Rather, deciding whether the agreement was unlawful "[would] not change no matter how actively or passively [OpenBand] ch[ose] to exercise that right." *Id.* at 199.

Here, the legal question at issue is, similarly, "frozen in time." *Id.* at 199. Our task is limited to reviewing the Bankruptcy Court's determination, in the Clarification Order, that its prior orders do not preclude Appellee from pursuing collection of assessments. This question requires a straightforward application of res judicata doctrine, which is not contingent of any future uncertainty. Determining whether the Bankruptcy Court adjudicated the collection of assessments, during the Council's Chapter 11 reorganization, is wholly independent of whether Appellees decide to or are entitled to collect these fees in the future. *See* ECF 4-1 at 3 (indicating that Appellees sought to alleviate confusion that will result when the Debtor pursues collection of unpaid fees). Through the res judicata framework, this Court can analyze, presently, whether any claims for assessments were adjudicated during the reorganization proceedings.

With respect to the "hardship" prong, this appeal constitutes Appellants' only opportunity to seek review of the Clarification Order. According to Appellants, the Bankruptcy Court erroneously concluded that its prior orders did not remove their obligation to pay assessments.

Withholding judicial consideration here would prevent Appellants from challenging the substance of that Order. *Cf. Ohio Valley Envt'l Coalition v. Hurst*, 604 F.Supp. 2d 860, 878 (S.D. W.Va. 2009) (stating hardship would result because that action was the only opportunity for judicial review). Even so, like the Bankruptcy Court's decisions, this Court's decision does not address the Creditors' underlying obligation to pay assessments. Resolving that question will require, *inter alia*, application of Maryland statutes and a determination of whether claims for unpaid assessments were a compulsory counterclaim in the initial Chapter 11 proceedings — the latter of which is explored below.

### 2. Compulsory Counterclaim

As described above, this Court will address only the Bankruptcy Court's conclusion that its prior orders did not alter the Creditors' obligation to pay general and special assessments. On the other hand, the question of whether Appellees *should have* brought claims regarding assessments in the Bankruptcy Court proceedings is not ripe at this time. A useful comparison is presented in *L-3 Communications Corp. v. Serco, Inc.*, 673 F.App'x 284 (4th Cir. 2016). In that case, the Air Force awarded an indefinite delivery, indefinite quantity contract to Serco. *Id.* at 286. When Serco began awarding subcontracts to solely one company ("Jaxon"), the plaintiffs brought an 81-count complaint against Serco. *Id.* at 286 ("The plaintiffs alleged that Jaxon was not qualified to perform the assigned work, and that Serco's decision to award [subcontracts] was based on a 'fraudulent scheme' between Serco and Jaxon"). Relevant here, two counts alleged that Serco intended to use the plaintiff's confidential information to compete against them for a future project that was being "contemplated" by the Air Force. *Id.* at 290. Thus, the plaintiff sought broad relief declaring that any competition against them would constitute misappropriation of the plaintiff's trade secrets. *See id.* at 290. Analyzing ripeness, the court concluded that it was

7

"entirely speculative at this stage whether the plaintiffs or Serco might bid on any future projects announced by the Air Force and, if so, whether Serco [would] use the plaintiffs' confidential information improperly." *Id.* at 290–91.

Applied here, adjudication of Appellants' contention regarding compulsory counterclaims depends upon at least three uncertain future events. Namely, (1) Appellees need to pursue collection of assessments from Appellants, (2) Appellants must refuse to pay the assessments, and (3) Appellees must resort to litigation, likely in state court. The factual uncertainty presented is perhaps best understood in practical terms.[4] Now that the Bankruptcy Court has clarified that its damages orders did not implicate the issue of paying assessments, it is "entirely speculative," *L-3*, 673 F.App'x 284 at 290, to assume that Appellants will fail to pay these fees in the future. And, if these events do occur, a future court can determine whether Appellees were *required* to litigate Appellants' liability for assessments in the reorganization process.

Ripeness doctrine "concerns the 'appropriate timing of judicial intervention.'" *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)). At this time, this Court can analyze whether the Bankruptcy Court properly found that Appellants' obligation to pay assessments has not been nullified by the orders resulting from the Chapter 11 reorganization. However, determining whether claims for unpaid assessments should have been brought — as a compulsory counterclaim — first requires Appellees to pursue collection of these fees. Since Appellees have not yet filed a claim for assessments, it would be merely theoretical to assess whether they were required to bring such a claim in the

---

[4] Appellants appear to contend that res judicata and compulsory counterclaims involve the same analysis. *See* ECF 12 at 2 (asking whether the Debtor's actions are barred "pursuant to the doctrines of Res Judicata and/or Collateral Estoppel under the doctrine of permissive counterclaim."). Instead, the effect of res judicata is one element of the Fourth Circuit's four-part inquiry for determining whether a counterclaim was compulsory under Rule 13. *See Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988); *see also* Fed. R. Civ. P. 13(a)-(b).

8

bankruptcy proceedings. Therefore, I leave this question for a future court, and Appellees' motion to dismiss is granted as to that aspect of the appeal.

### C. Late Filing

Because Appellants did not comply with Rule 8018, I next address their untimeliness. Rule 8018 requires an appellant to "serve and file a brief within 30 days after the docketing of notice that the record has been transmitted or is available electronically." Fed. R. Banking. Proc. 8018(a)(1); *see also* D. Md. Loc. R. 404.3. Here, docketing of the notice occurred on June 5, 2019, ECF 3, thus the deadline to file and serve an appellate brief was July 5, 2019. Therefore, Appellants' submission, on July 11, 2019, was untimely by six days. *See* ECF 12.

Though Appellees urge us to dismiss the appeal for untimeliness, *see* ECF 4 at 4–5, the "sanction of dismissal for failure to comply with a non-jurisdictional, procedural guideline … [is] a harsh sanction which a district court must not impose lightly." *In re SPR Corp.*, 45 F.3d 70, 73 (4th Cir. 1995). In deciding whether to dismiss a party's bankruptcy appeal for a procedural violation, district courts must "take at least one of the following steps: (1) make a finding of bad faith or negligence; (2) give the appellant notice and an opportunity to explain the delay; (3) consider whether the delay had any possible prejudicial effect on the other parties; or (4) indicate that it considered the impact of the sanction and available alternatives." *In re Serra Builders, Inc.*, 970 F.2d 1309, 1311 (4th Cir. 1992). Importantly, district courts should consider and balance all four of these factors. *SPR Corp.*, 45 F.3d at 74; *see also In re Allnutt*, 105 F.3d 646 (4th Cir. 1997) ("This failure by the district court to actually exercise its discretion by considering and balancing all relevant factors amounts to an abuse of discretion.").

Here, the *SPR Corp.* factors illustrate that the appeal should not be dismissed. First, the Court detects no bad faith or negligence. *See, e.g.*, *McDaniel v. Fed. Nat'l Mortg. Ass'n*, 2015

9

WL 1522942, at *3 (D. Md. Mar. 31, 2015) (finding bad faith where the appellant "persistently ignored procedural requirements" at every step of the litigation). Second, Appellants explained that the delay was the result of their counsel suffering an injury. *See* ECF 11 at 1. Third, even if the Court were to reject this excuse as inadequate, Appellees have not demonstrated prejudice from the late filing. Appellees' suggestion, that prejudice has resulted from their need "to prepare and file this motion," ECF 4 at 5, is not compelling, because it was Appellees' choice to file a motion to dismiss rather than consenting to a relatively modest delay in light of an alleged injury. *See Nelson v. Jackson*, 2016 WL 1214832, at *3 (D. Md. Mar. 23, 2016) (finding dismissal was not warranted where the appellee failed to show prejudice, even though the appellant's excuse was not convincing). Finally, the Court need not consider alternatives, since Appellees have filed their brief in response. Based on the relatively brief delay, and the lack of prejudice to Appellees, the Court will exercise its discretion to consider the appeal.

### III.     Merits – Bankruptcy Court's Clarification Order

Since the appeal is ripe, and since I have exercised this court's discretion to permit Appellants' untimely filing, I will now proceed to the merits of the appeal. In the Clarification Order, the Bankruptcy Court determined that the Preliminary Order and Final Order "in no way involved the Debtor's rights, remedies, or claims against the Creditors for unpaid assessments." ECF 3-1 at 10–11. Appellants contend that the Clarification Order should be overturned, because the Reorganized Debtor's claims are barred under collateral estoppel and res judicata. ECF 12 at 5.

The doctrine of res judicata encompasses claim preclusion and issue preclusion, *i.e.*, collateral estoppel. *Orca Yachts, LLC v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002). A party must establish three elements for claim preclusion: (1) the prior judgment was final and on

the merits, (2) the parties are identical, or in privity, in the two actions, and (3) the claim in the second matter is based upon the same cause of action involved in the earlier proceeding. *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008).[5] The first two elements are not in dispute. *See* ECF 18 at 8 ("The parties agree that the first two elements are satisfied"). However, the Bankruptcy Court found that element three was not satisfied. ECF 3-1 at 8–11. I agree.

Case law illustrates that the timing of alleged conduct is the focus of a court's inquiry. For example, in *Pueschel v. United States*, 369 F.3d 345 (4th Cir. 2004), the court found that claims were barred by res judicata. In an earlier suit ("1997 lawsuit"), an air traffic controller had brought a Title VII action against the FAA for alleged discrimination based on sex and disability. *Pueschel v. Slater*, 173 F.3d 425 (4th Cir. 1999). However, the district court awarded summary judgment to the FAA, and the Fourth Circuit affirmed its decision that her claims "lack[ed] merit." *See id.* at *2. Several years later, Pueschel brought two new suits, one under Title VII and one under the Federal Tort Claims Act ("FTCA"). 369 F.3d at 348. Both actions were dismissed on res judicata grounds. In the Title VII suit, the district court judge reasoned that he was bound by the court's determination, in the FTCA suit, that Pueschel was precluded from asserting discrimination and retaliation claims because of her unsuccessful 1997 lawsuit. *Id.* at 352. In analyzing res judicata, the court found that there was "no question that Pueschel's FTCA and Title VII suits ar[ose] out of the same transaction or series of transactions or the same core of operative facts." *Id.* at 355 (citation omitted). The court emphasized the time period for the claims, particularly that both claims were based on an alleged pattern of FAA conduct that took place prior to the 1997 suit, between January, 1984 and April, 1994. *See id.*

---

[5] Appellants also contend, without additional explanation, that a claim for assessments is an issue precluded by the Bankruptcy Court's prior orders. *See* ECF 20 at 10. As one element of issue preclusion, a party must establish that "the issue or fact is identical to the one previously litigated." *In re Microsoft Corp.*, 355 F.3d 322, 326 (4th Cir. 2004). For the same reasons explained herein, their argument fails.

11

Here, timing was also central to the Bankruptcy Court's clarification. Specifically, the Preliminary Damages Order and Final Damages Order addressed claims between the parties that arose before the Reorganized Debtor filed its petition for Chapter 11 bankruptcy in March, 2016. The issue of unpaid assessments, on the other hand, arose "postpetition," *i.e.*, throughout 2017 and 2018. As the Court explained, the "claims" referred to in the Preliminary Order referred to Appellants' claims against the Reorganized Debtor for violations of the Fair Housing Act, property damage to Unit PH4A, and for consequential and other related damages. ECF 3-1 at 10–11. The Order did not address any claims related to unpaid assessments.

In *Bouchat v. Baltimore Ravens, Ltd.*, 619 F.3d 301 (4th Cir. 2010), a plaintiff sued the Ravens organization and various National Football League entities for copyright infringement. In an earlier suit, a jury had awarded the plaintiff zero dollars in damages for infringements. *See Bouchat v. Baltimore Ravens, Inc.*, 346 F.3d 514 (4th Cir. 2003). In the latter suit, he sought to enjoin the defendants from depicting the copyrighted logo in season highlight films, and in the team's corporate lobby. *Id.* at 306. According to the court, res judicata did not bar the second action because, while the initial suit concerned infringements that took place *prior* to the final judgment, the suit at issue sought to remedy *present* infringements. *See id.* at 316.

This case presents a similar situation. While the Chapter 11 reorganization process involved prepetition claims, the Bankruptcy Court did not address postpetition activities — such as collection of assessments. Indeed, much of the potential liability for unpaid assessments arose in June and October of 2018, months after the Bankruptcy Court entered its preliminary award of damages. Based on this timing, any claim for assessment fees is not based upon the same "cause of action" involved in the reorganization proceedings. The Bankruptcy Court correctly determined that its prior orders did not absolve Appellants of their responsibility to pay assessments; in fact,

neither the Preliminary Damages Order nor the Final Damages Order spoke to the issue of assessments. Thus, I affirm the Clarification Order in which the Bankruptcy Court explained that issues pertaining to assessments had not been adjudicated.

## IV. Conclusion

For the reasons explained above, the question of whether assessment liability was a compulsory counterclaim is not ripe. Thus, that portion of Appellees' motion to dismiss is GRANTED, but the remainder of the motion to dismiss is DENIED. Furthermore, the Bankruptcy Court's decision is AFFIRMED. A separate Order follows.

Dated: October 9, 2019 /s/
Stephanie A. Gallagher
United States District Judge